BERTHA BADENFELD *vs.* MASSACHUSETTS MUTUAL
ACCIDENT ASSOCIATION.

Suffolk.    January 13, 1891. — June 10, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, & MORTON, JJ.

*Accident Insurance — Arbitration — Condition Precedent — Burden of Proof.*

Under the proviso in a certificate of insurance against bodily injuries, that "no suit or proceeding at law or in equity shall be brought to recover any sum herein, unless the same has been first referred to the arbitration of just and competent men," such an arbitration is not a condition precedent to a right of action upon the certificate.

In an action upon a certificate of membership in an accident association, containing provisos that "members are required to use all due diligence for personal safety and protection," and that no claim should be made under the certificate "when death or injury may have happened in consequence . . . of any voluntary exposure to unnecessary danger," the burden of proof is on the defendant to show that the assured did not use such due diligence, or that he did thus expose himself to such danger.

At the trial of an action upon such a certificate, there was evidence that the assured before ten o'clock A. M. was waiting in a railroad station to take a train leaving at a quarter past ten from track No. 7; that on the adjoining track No. 8, next the wall of the building, stood a train which he knew left at ten; that between these tracks was a platform for the use of passengers taking and leaving trains; that outside of track No. 8 and next the wall was a narrow platform overhung by the train and cut into by girders projecting from the wall, intended for the use of train hands, though sometimes used by passengers; and that just after the ten o'clock train had started, the body of the assured was found on track No. 8 next to the edge of the outside platform, in such a situation and condition as showed that he had been run over by the train and instantly killed. There was no evidence of the cause of his fall or of his acts proximate to his death.    The presiding judge refused to rule that, if the assured was on the outside platform or leaving the train while it was in motion, a defence was made out, on the ground that the assured did not use due diligence, or had voluntarily exposed himself to unnecessary danger.    *Held,* that the defendant had no ground of exception.

CONTRACT, by the administratrix of the estate of Charles Badenfeld, to recover five thousand dollars on a certificate of membership in the defendant association issued to the intestate, who was the husband of the plaintiff. The certificate contained, among other provisions not material, the following: " In the event said member shall sustain during the continuance of his membership bodily injuries effected through external, violent, and accidental means, within the meaning of the conditions

herein recited, and such injuries alone shall have occasioned death within ninety days from the happening thereof, then we agree to pay to his wife, Bertha Badenfeld, if surviving, or, if not surviving, to his heirs or legal representatives, five thousand dollars, . . . provided always, First, members are required to use all due diligence for personal safety and protection. . . . Fifth, . . . no claim shall be made under this certificate . . . when death or injury may have happened in consequence . . . of any voluntary exposure to unnecessary danger. . . . Ninth, no suit or proceeding at law or in equity shall be brought to recover any sum herein, unless the same has been first referred to the arbitration of just and competent men."

At the trial in the Superior Court, before *Pitman,* J., it appeared in evidence that the intestate came to his death in the train-house of the Boston and Lowell Railroad Station in Boston, on December 26, 1888. It was admitted that there had been no reference to arbitration of the plaintiff's claim, either as regards the amount thereof, or as to the question of the liability of the defendant; and that the plaintiff had never requested such arbitration.

There was evidence that the intestate came into the train-house at about half past nine o'clock on the morning of the day of the accident; that in this train-house were numerous parallel tracks for passenger trains, with platforms between extending out of the train-house to the north; that the most easterly track was called track No. 8, and the track next westerly, and separated from it by a platform, was called track No. 7; that between track No. 8 and the easterly wall of the train-house was a platform, over which a car standing on the track would extend about six inches; that projecting from such easterly wall were iron girders twenty-five feet apart and supporting the roof, which rendered this platform of varying width, being about five and a half feet in the clear between the edge of the same and the wall itself, but only about two and a half feet where the girders projected into the platform, thus leaving a space of about two feet only between the side of a passenger car standing on the track and the face of the girders; that this platform was intended for the use of train hands, and not for that of passengers, though sometimes used by the latter; that the platform

intended for the use of passengers, and which was generally used by them in getting upon or in alighting from cars standing on track No. 8, was the platform between that track and track No. 7.

There was further evidence that the intestate came into the train-house alone, and inquired of the gateman at one of the gates through which passengers went in going to and from the cars, respecting the trains for East Cambridge, and was told that the next train for that point left at a quarter past ten from track No. 7 ; that he at the same time showed the gateman a ticket for a single passage between Boston and East Cambridge ; that the quarter past ten train had not yet backed into the train-house, and the only train then standing in the train-house was one standing on track No. 8, which was due to leave at ten o'clock A. M. ; that the intestate, upon being told that the train then standing on track No. 8 left at ten o'clock, asked the gateman whether that train did not stop at East Cambridge, and was told that it did not ; that the intestate then proceeded to walk about the train-house, and up and down the platforms between the tracks, and was last seen by the gateman at about a quarter before ten o'clock, when the intestate accosted him ; that the ten o'clock train was made up of two passenger cars, the forward one of the two being a smoking car; that upon the departure of the ten o'clock train, and as soon as the rear end of the rear car had passed along, the gateman saw the intestate lying dead upon track No. 8, his head lying upon the westerly or left hand side of the more easterly rail nearly severed from the body, and the rest of the body crowded in between that side of the rail and the edge of the outside platform; that at the time the train started, the intestate was not upon the rear platform of the smoking car, or upon either platform of the rear car ; and that, as this train stood in the station, the forward platform of the smoking car was about twenty feet from the point upon the track where the body of the intestate was found. There was no evidence that the intestate was seen by any one after he spoke to the gateman, about a quarter before ten o'clock, and no evidence of the cause of his falling upon the track and in front of the car wheels, which passed over him and occasioned his death.

At the close of the plaintiff's evidence, and also at the close of the defendant's evidence, the defendant requested the judge to nonsuit the plaintiff, on the ground that, there having been no arbitration or request for arbitration, the present action could not be maintained; but the judge refused to do so, and the defendant excepted. The defendant also requested the judge, at the close of all the evidence, to direct a verdict for the defendant, which the judge also refused to do, and the defendant excepted. The defendant also requested the judge to give the following instructions to the jury:

"1. That, upon all the evidence in the case, the plaintiff is not entitled to maintain the present action. . . .

"3. That if the jury find that the deceased, while on the platform on the right of track No. 8, fell, or was struck by the moving train and knocked under the car, the plaintiff is not entitled to recover in the present action.

"4. That if the jury find that the deceased attempted to get off the train while in motion, and in so doing fell or was knocked under the car, then the plaintiff is not entitled to maintain the present action.

"5. That if the jury find that the deceased, while being on the platform above mentioned, had a fit or illness of any kind and fell under the car, then the plaintiff cannot recover in the present action.

"6. That the deceased, in being on the platform in question, was not using all due diligence for personal safety and protection.

"7. That if the jury find that this platform on the right of track No. 8 was obviously not intended for the use of passengers, and was obviously a dangerous place, then the deceased was not in the exercise of all due diligence for personal safety and protection ; and if the jury find that the deceased, while being on such platform, by reason of illness or otherwise, fell or was struck by the moving train and knocked under the car, then the plaintiff cannot recover in the present action.

"8. That if the jury find that the deceased voluntarily placed himself in a position of danger, and his death occurred in consequence thereof, the plaintiff cannot recover."

The judge refused to give these instructions, but instructed the jury, among other things, as follows:

"Did the deceased meet his death in a careless way? that is, with a lack on his part of due diligence? Of course that renders it necessary to discuss somewhat and to apply the law somewhat to hypothetical cases." The judge then read the defendant's seventh request. "I cannot give you that instruction in the way in which it is asked. I cannot rule to you, as matter of law, that the finding of the party upon that platform, whatever you may think of the situation of the platform, or its use or intended use, necessarily, as matter of law, proves that the party was not in the exercise of due care. Of course, if you find that that platform was not intended and not prepared for the use of passengers, and did not present any invitation to passengers, and was obviously a dangerous place, then the law would impose upon him a different measure of care when he was in such a dangerous place than the rule of due diligence would impose upon him if he was in a safe place, and it may be that the jury would be justified in finding, if he was there unnecessarily and improperly, with no excuse or reason for being there, that that act constituted a lack of proper care. But, on the other hand, I cannot say that you may not find in the case — it is not for me to say whether you can or cannot — reasons or excuses for his being there which would be consistent with the exercise of due care in being in that place, notwithstanding the contingencies and dangers named in the prayer. I must therefore leave that to you upon this consideration." The judge then read the eighth request of the defendant. "I give you that instruction, with this qualification: 'If the deceased voluntarily placed himself in a position of danger, without any reasonable excuse therefor, then the plaintiff cannot recover.' The other prayer which I shall give you [the fourth] relates to his leaving the train, upon the suggestion that he left the train while it was in motion; and the law upon that matter I may as well give in the exact language of the Supreme Court." The judge then quoted the opinion in *Gavett* v. *Manchester & Lawrence Railroad*, 16 Gray, 501, 507, beginning at the words, "It cannot be doubted," and ending with the words, "evidence of carelessness"; and then proceeded: "It will be for you to say, if you reach this part of the case, whether the defendant, upon all the evidence and upon all the circumstances of the case, has satisfied you, as in other

civil cases, so that you can feel that degree of assurance that you would act upon in a business matter, — has made it so probable that you would say, speaking in a business way, that you were satisfied that the deceased was not in the exercise of due diligence.   Of course, you are not required to be sure of it, but only to be satisfied by a fair preponderance of the evidence.   If it is left in such a state that you cannot be satisfied, then the defendant has failed in its attempt to make out that defence. To recapitulate.   You will first determine whether this is a case of accidental death, or a case of suicide, the burden being upon the plaintiff in that.   If you decide that in favor of the plaintiff, you will then decide whether the deceased was in the exercise of due diligence ; or rather, more exactly, whether the defendant has proved that he was not in the exercise of due diligence.   If you find either of these propositions as the defendant contends, then the defendant is entitled to your verdict ; if you find them both as the plaintiff contends, then your verdict will be for the plaintiff for the amount which I have indicated."

The jury returned a verdict for the plaintiff ; and the defendant alleged exceptions.

*F. E. Snow*, for the defendant.

*A. A. Ranney & J. Woodbury*, for the plaintiff.

BY THE COURT.   This opinion, prepared by Mr. Justice William Allen, was approved by the court in his lifetime.

The promise of the defendant was to pay a certain sum in the event of the death of the plaintiff's intestate, occasioned by "bodily injuries effected through external, violent, and accidental means."

There are nine provisos in the certificate, the last of which is, that "no suit or proceeding at law or in equity shall be brought to recover any sum herein, unless the same has been first referred to the arbitration of just and competent men."   It was admitted that there had been no reference to arbitration of the plaintiff's claim, and that the plaintiff never requested such arbitration.   The first exception is to the refusal of the court to rule that, for that reason, the action could not be maintained. The promise is, not to pay the award, but to pay the sum named, and the proviso does not make the award a condition

precedent to the promise to pay, but a mode of enforcing that promise. It is well settled that such an agreement is no bar to an action on the promise. *Reed* v. *Washington Ins. Co.* 138 Mass. 572, and cases cited.

The certificate also contains the provisos, that "members are required to use all due diligence for personal safety and protection," and that "no claim shall be made under this certificate . . . when the death or injury may have happened in consequence . . . of any voluntary exposure to unnecessary danger." These provisos constitute matter of defence, and the burden of proving them is upon the defendant. *Freeman* v. *Travelers' Ins. Co.* 144 Mass. 572. The other exceptions are to the refusals of the court to rule upon the undisputed evidence in the case, and upon the hypothetical findings of the jury upon the evidence, that the defence of want of due diligence or of voluntary exposure to unnecessary danger by the deceased was made out, and to instruct the jury to find a verdict for the defendant.

After the ten o'clock train left, the dead body of the plaintiff's intestate was found on the track where the train had stood, in such a situation and condition as showed that he had been run over by the train and instantly killed. Track No. 8 was the easterly track, and was near the easterly wall of the train-house. A platform extended from the wall toward the track so far that a car upon the track would overhang the platform about six inches. The distance from the wall to the edge of the platform was about five and a half feet, but there were girders extending inward from the wall about three feet, so that the distance from the face of the girders to the edge of the platform was about two and a half feet. There was evidence tending to prove that the plaintiff's intestate, before ten o'clock in the forenoon, was waiting in the train-house of a railroad station in Boston to take a train that left at a quarter past ten on track No. 7, and that he knew that a train left on track No. 8 at ten o'clock.

The defendant contended, and there was evidence to prove, that the platform east of the tracks was intended for the use of the train hands, and not for passengers, though it was sometimes used by them, and that the place intended for and generally used by passengers for taking and leaving cars on track

No. 8 was the platform on the westerly side of that track, between it and track No. 7.

The supposition that the deceased fell in attempting to get on or off any platform of the cars while they were in motion, seems inconsistent with the evidence. The only theory of accidental injury consistent with the evidence seems to be that the deceased was thrown or fell from the platform east of the cars upon the rail between the front and rear trucks of the forward car, about the time the cars started, and before they had moved twenty feet. There was no evidence of the cause of his fall, and it cannot be contended that the mere fact that he fell under the car is a defence. The real contention of the defendant, expressed in different forms in its prayers for instructions, is that the mere fact that the deceased was in a dangerous place, (on the platform east of the track,) or, as stated in one prayer for instructions, doing a dangerous act, (leaving a car while it was in motion,) is, as matter of law, conclusive proof that he did not use all due diligence for personal safety and protection, and that he voluntarily exposed himself to unnecessary danger.

This is not an action against the railroad company in which the mutual rights and duties of a person injured and the company are involved.

As regards the defendant, the deceased had a right to go upon the platform, and to examine the wall of the building, and the girders, and the platform, and the cars standing upon the track, and to enter and leave them. None of these acts would of itself be evidence of want of due diligence for personal safety, or of voluntary exposure to unnecessary danger. Any of them might be done carefully or carelessly. The manner and circumstances of the act would give character to it.

The facts that the deceased was upon the platform, and that he was injured in the manner shown, clearly do not constitute negligence in law, or afford conclusive evidence of negligence.

The defendant asked for instructions upon the hypothesis that the deceased fell while leaving the car when it was in motion. There was no evidence that he so fell, but, if it could be inferred, it would not be conclusive of his negligence. That would depend upon the circumstances, and there would be no presump-

tion that the circumstances were such as to make it negligent. If the jury could surmise that he left the car when it was in motion under circumstances which rendered the act negligent, they could equally well surmise that he left it under circumstances which would show that the act was not negligent. It may be said, in general, in regard to each of the defendant's prayers for rulings and instructions, that there is no evidence of the act of the deceased proximate to his injury, and of course no evidence of the circumstances which characterize the act as negligent or otherwise. If the jury infer an act, they are not, without evidence, at liberty to infer the circumstances which made the act negligent. The jury could not properly base their verdict upon particular facts found without evidence. The real question was whether the facts directly proved by the evidence, and those to be inferred from them, sustained the burden of proof which was upon the defendant, and this was clearly a question for the jury and not for the court, unless the court could rule that there was not sufficient evidence. The instructions given were sufficiently favorable to the defendant.

*Exceptions overruled.*

## MEMORANDUM.

ON the eighteenth day of June, 1891, the Honorable JAMES MADISON BARKER, one of the Justices of the Superior Court, was appointed a Justice of this Court, in place of Mr. Justice William Allen, deceased, and took his seat upon the bench on the twenty-sixth day of the same month, at a session of the full Court then held at Boston in the county of Suffolk.