CASE 16—ACTION BY BOURBON COUNTY COURT AGAINST THE HARTFORD FIRE INSURANCE COMPANY TO RECOVER A POLICY OF FIRE INSURANCE—MARCH 11.

# Hartford Fire Insurance Co. v. Bourbon County Court.

### APPEAL FROM BOURBON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

INSURANCE POLICY—PROVISIONS IN CONFLICT WITH STATUTE—TOTAL LOSS—ARBITRATION—EVIDENCE—LETTERS—PHOTOGRAPH OF BURNT WALLS.

Held: 1. A provision in a policy that the company shall not be liable beyond the actual cash value of the property at the time of the fire is invalid, as Kentucky Statutes, section 700, fixes the loss at the face of the policy, where it is total.

2. A provision in a policy that the amount of loss shall be the cash value at time of loss, less the proper deduction for depreciation, "however caused," is invalid, as the statute provides that "in case of loss, the estimated value of the property may be diminished to the extent of any depreciation occurring between the dates of the policy and the loss."

3. A provision in the policy that the loss "shall in no event exceed what it would cost the insured to replace the building," is invalid, because where the loss is total the statute fixes the loss at the face of the policy.

4. A provision in the policy that "in case of difference between insured and insurer as to the amount of loss the sum should be fixed by appraisers," if it means that the question whether there has been a "total loss," may be submitted to arbitrators, is invalid, as submitting a question of law as to what was a total loss within the meaning of Kentucky Statutes, section 700.

5. In an action on a fire policy; the court properly rejected a letter written by the adjuster to one whom the company had selected as its representative in an effort to adjust the loss. It appeared that said representative had a conversation with one of the policy holders and handed him the letter, and some parts of the conversation that then ensued was admitted in evidence, but it did not appear that anything was said therein

about the letter; and the letter not appearing to be relevant to the issue.

6. The court properly admitted evidence in detail, expert and otherwise, as to what was necessary to restore the building and as to the percentage or proportion of it that was destroyed by the fire, but properly excluded evidence as to the cost of replacing the building.

7. Photographs of the building taken during and after the fire, though they seem to bear out appellant's theory that the building was not so injured as to be totally destroyed, are inconclusive, where, even some of appellant's witnesses admit that the condition of the walls was such that they must be torn away down to the top of the first story, yet an examination of the photographs fails to give the slightest intimation of that fact.

BRECKINRIDGE & SHELBY, FOR APPELLANT.

R. W. BARGER AND JOHN S. SMITH, OF COUNSEL.

The court house of Bourbon county was insured for $50,000 in various companies, and was burned. A large portion of the building remained. The entire basement, the walls and floors of the first story, the floors of the second story, and part of its walls, and part of the floor of the third story and part of the walls remained.

The county court claimed that the fire had resulted in the total destruction of the building, that its identity was destroyed, and that it was legally a total loss.

The companies claimed that the visible evidence to the eye refuted this claim, and that the entire building could be reconstructed according to the original plans for $33,918, and that they were willing and offered to have this done. They claimed that under the provisions of the policies they were entitled to require the insured to agree to the appointment of appraisers; that Kentucky Statutes, section 700 did not change, alter or affect this stipulation in the contract. The county refused to comply with the demands of the company to appoint appraisers, to enter into any agreement, or to stand by any award, and brought separate actions on the sixteen policies held by it.

Under the pleadings, after demurrers and motions to strike out had been disposed of, the two issues between the parties are:

1. That under the stipulations of the policy, which the county accepted, and it was made valid only upon the conditions therein set out, one of which was that no suit could be instituted in the event of loss, until after an appraisement and estimate was made by appraisers duly selected.

2. A question of mingled law and fact as to whether the building was a total loss.

Upon the first issue the court erroneously held that the mere claim by the plaintiff set aside and rendered nugatory those conditions and stipulations, and turned over to the jury alone all questions as the extent of the loss; and upon the second issue we believe the court has erred in attempting to give the legal definition of what the law means by "total loss," and has darkened counsel with many words.

Total loss ·must include the conception of value as well as amount, of money, as well as of uses.

The court refused to permit defendant to submit to the jury the calculations of the architects, and refused to permit them to say to the jury what material was in the building before it was burned and what material was necessary to restore it to its original condition. The defendant desired to prove and offered to prove every item, no matter how minute, which was required to restore the building. It offered to the jury diagrams, plans and specifications. These were admitted. It then offered to the jury plans and specifications of the restoration of the building. These specifications were rejected. So that the jury were never permitted to receive the very best testimony possible as to whether that building could be restored. If it could be restored it was not a total loss. Restoration does not mean rebuilding or replacement. It means the use of what remains, and in addition thereto, what is needed.

The instructions of the court were in logical accord with its rulings upon the demurrers and pleadings, and we think are erroneous in those given, and that the court erred in refusing to give instructions A. B. C. and D. asked by defendant, especially B. and C.

One of the points which we desire to submit, is, that in determining what is a total loss, the comparative or relative value of what is left standing to the value of the structure as it was the moment before the fire, is a fact which has to be taken into consideration by the jury, and testimony concerning it is relevant.

### AUTHORITIES CITED.

Caledonia Ins. Co. v. Cooke, 19 R., 651; Palatine Ins. Co. v. Weiss, 22 R., 994; Aetna Ins. Co. v. Glasgow Elec. Light & Power Co., 21 R., 728; Thuringia Ins. Co. v. Maliott, 23 R., 1248 (64 S. W., 991); Germania Ins. Co. v. Ashby, 23 R., 1564, (65 S. W., 611); Yendell v. Western Ins. Co., 21 Miscellaneous Reps., N. Y. Sup. Ct., 348; Northwestern Mutual Life Ins. Co. v. Sun Ins. Office, 88 N. W., 272; Same v. German Ins. Co., 56 L. R. A., 108.

EMMETT M. DICKSON, T. E. ASHBROOK, BRENT & THOMAS, DENNIS DUNDON AND McMILLAN & TALBOTT, ATTORNEYS FOR APPELLEE.

What is meant by "total loss," is purely a question of law. As to whether or not there was a total loss in this case is purely a question of fact.

In undertaking to determine what constitutes a "total loss" within the meaning of the statute, or as to whether the ascertainment by the appraisers of the amount of the loss in the manner provided in the policy, is a condition precedent to the right of recovery by the appellee, it is necesary to construe the policy in connection with section 700, Kentucky Statutes, which is as follows: "That insurance companies that take fire or storm risk on real property in this Commonwealth, shall on all policies issued after this act takes effect (in case of total loss thereof by fire or storm) be liable for the full estimated value of the property insured, as the value thereof is fixed in the face of the policy; and in cases of partial loss of the property insured, the liability of the insurance company shall not exceed the actual value of the property insured: PROVIDED, that the estimated value of the property insured may be diminished to the extent of any depreciation in the value of the property occurring between the dates of the policy and the loss; And provided further that the insured may be liable for any fraud he may practice in fixing the value of the property, if the company be misled thereby."

We contend that every provision of the policy which to any extent conflicts with the purpose intended to be accomplished by the enactment of this statute is nullified.

The contract of insurance appears on its face to have been drawn without any reference whatever to the provisions of this statute, and we feel warranted in saying that the form of this policy is the same that was used by the company long prior to the adoption of this statute.

The Legislature in enacting this statute, evidently intended to protect the insured from the stipulations and provisions which this policy contains, where there was a total loss.

We submit that under the terms of the policy it was never agreed by the parties that these appraisers were to be selected for any other purpose than to ascertain "*the amount of the loss or damage*," and if, by the provisions of this statute they have nothing to do with the determination or fixing the *amount* of money to be paid by the company, such company has no right to demand by the terms of the policy the submission of the question of loss to such appraisers, where there is a "total loss."

And to hold that in case of a total loss the company is still entitled, as a condition precedent to any liability on its part, or any right of recovery by the insured, that appraisers should be appointed to first ascertain whether there had been a total loss, would defeat the very purpose for which the statute was enacted.

We submit that the instructions given by the court are plain, simple and easily understood and applied by the jury to the facts of the case, and are substantially the same given in similar cases heretofore, which have been expressly upheld and approved by this court.

## SYNOPSIS AND AUTHORITIES.

1. Effect of provisions of section 700, Kentucky Statutes, on the Contract of Insurance.

### INSTRUCTIONS—AUTHORITIES.

2. Caledonia Ins. Co. v. Cook, 19 Ky. Law Rep., 651; Aetna Ins. Co. v. Glasgow E. L. & P. Co., 21 Id., 728; Palatine Ins. Co. v. Weiss, 22 Id., 994; Thuringia Ins. Co. v. Mallott, 23 Id., 1248; Germania Ins. Co. v. Ashby, 23 Id., 1564.

### EVIDENCE.

3. (a) Abstract of testimony of expert architects and contractors. (b) Incompetency of letter rejected.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

The county courthouse of Bourbon county was insured against loss or damage by fire in the sum of $50,000. Appellant was one of the insurers, to the extent of $1,000. This suit was to recover of appellant $1,000 because it was alleged that the building, during the continuance of appellant's policy, had been totally destroyed by fire. The answer denied that the loss was total. It further pleaded that the loss was partial only; that it did not exceed in value $33,918.27, and that for $34,000 it could, by using the part not destroyed by fire, be replaced in as good or better condition than it was just immediately before the fire. It was also pleaded that in the policy of insurance sued upon that there was a provision that the sum insured should

not be payable, nor should suit be brought to recover it, till sixty days after the loss or damage had been ascertained and awarded by appraisers if arbitration had been required; that appellant had required appraisers; that appellee had refused and failed to name an appraiser; and that no such appraisement or award had been made. The provision for arbitration pleaded and relied on is as follows: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or if they differ, then by appraisers, as hereinafter provided; and the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by the company in accordance with the terms of this policy." The prayer of the answer is: "Having answered, defendant prays to be hence dismissed with its costs." The failure and refusal of appellee to enter into the arbitration was not denied. The court overruled the demurrer to the paragraph of the answer pleading the matters in avoidance above set out. The issue made by these pleadings, and the only issue, is, was the loss total? The other matter pleaded by defendant, while admitting the fact of a partial loss, or damage, pleaded the other facts in the nature of a plea in abatement.

The court instructed the jury as follows: "(1) The court instructs the jury that the law is for the defendant, and

they should so find, unless they shall believe from the evidence either or both of the following propositions are true: First, that the fire of the 19th of October, 1901, destroyed the identity and specific character of plaintiff's building as a building; or, second, that the said fire, and the water used in the attempt to extinguish same, so injured and destroyed all parts of said building above ground as to render said building so unsafe and useless as a building as to require the walls or whatever was left standing of the building to be torn down and said building to be rebuilt throughout in order to be used as a building. (2) The court instructs the jury that, if they believe from the evidence that either or both of the above-mentioned propositions are true, then the law is for the plaintiff, and the jury should so find. (3) If the jury find for the plaintiff they should assess their recovery against the defendant in the sum of $1,000, with interest thereon from February 18, 1902. (4) The court instructs the jury that if they believe from the evidence that so much of the material of which the building was made has been destroyed by fire, or by reason of fire, as to leave what remained of no material value as a building, although it may have value as debris or salvage, there has been a total loss of that building, within the contemplation of the statute, and the law is for the plaintiff. But if the remaining part of said building can by repairing it be restored to the former condition of the original just before the fire, then the loss in contemplation of the statute is a partial loss, and the law is for the defendant. But if, instead of repairing the damaged part substantially, a reconstruction of the whole would be necessary to restore the building, then the loss is total."

A peremptory instruction was asked by appellant, and refused. The jury's verdict was for the plaintiff (appellee).

The only rulings complained of as errors are the court's refusal to give the peremptory instruction, its definition to the jury of the term "total loss," and the rejection of certain evidence offered by appellant.

The peremptory instruction was asked upon the assumption that the policy provided for an arbitration to fix upon the fact and extent of the loss, in case of disagreement, and that such award was a condition precedent under the contract to a right of action on the policy. The argument is that the parties have by contract stipulated that the company shall not be liable to any payment until the amount of loss had been fixed, either by the agreement of parties or, if they disagreed, by an appraisal and award by arbitrators provided for in the contract; that a disagreement did arise as to both the amount and extent of the loss, the insured claiming it was total, the insurer that it was partial. Counsel for appellant say: "We submit that whether the loss was partial or total was the very question which, under the statute, as written into the body of the contract, had been agreed to be submitted to appraisal."

The statute in question is section 700, Kentucky Statutes, as follows:

"That insurance companies that take fire or storm risks on real property in this Commonwealth shall, on all policies issued after this act takes effect (in case of total loss thereof by fire or storm), be liable for the full estimated value of the property insured, as the value thereof is fixed in the face of the policy; and in cases of partial loss of the property insured, the liability of the company shall not exceed the actual loss of the party insured; provided, that the estimated value of the property insured may be diminished to the extent of any depreciation in the value of the property occurring between the dates of the policy and the loss; and

provided further that the insured shall be liable for any fraud he may practice in fixing the value of the property, if the company be misled thereby."

The policy sued on was issued since the adoption of that statute. The provision of the policy for arbitration in event of disagreement is in direct conflict with the statute in several particulars. For example, the policy provides that "this company shall not be liable beyond the actual cash value of the property at the time of any loss." The statute fixes the liability of the company in event of total loss at the value of the property fixed in the face of the policy. The policy provides that the appraisal shall fix the cash value of loss or damage, "with proper deduction for depreciation however caused." The statute says that only that depreciation in the value of the property occurring between the dates of the policy and the loss shall be deducted. Again, the policy reads: "[The loss or damage] shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality." So far as this clause refers to a total loss it requires the arbitrators to proceed on a basis of estimate entirely different from that fixed by the statute.

It can not be claimed, of course, that there was any legal duty upon appellee to submit its claim to arbitrators before suit, other than may be found in the clause of the contract quoted.

Broadly speaking, one can not by contract bargain away his right to try his case before the courts (Whitney v. National, etc., Assoc., 52 Minn., 378, 54 N. W., 184; Badenfeld v. Mass. Mut. Acc. Assoc., 154 Mass., 77, 27 N. E., 769, 13 L. R. A., 263; Gray v. Wilson, 4 Watts, 39), although it is generally held that an agreement in a contract of insurance that the amount of the loss or damage shall be first ascer-

tained by arbitrators is enforceable as a condition precedent to the right to sue on the policy. Hanover Fire Insurance Co. v. Lewis, 28 Fla., 209, 10 South., 297; Randall v. Am. Fire Ins. Co., 10 Mont., 340, 25 Pac., 953, 24 Am. St. Rep., 50; Mentz v. Armenia Fire Ins. Co., 79 Pa., 478, 21 Am. Rep., 80.

But this is where there is a dispute as to the amount— where it is not fixed by the policy. If the amount is fixed, and the agreement is to submit the question of liability to arbitration, it is void. Tunnel Co. v. Segregated B. M. Co., 19 Nev., 121, 7 Pac., 271; Seward v. Rochester, 39 Hun, 44, affirmed 109 N. Y., 164, 16 N. E., 348; Corbin v. Adams, 76 Va., 58; Alexander v. Campbell, 41 L. J. Ch., 478; Whitney v. National Masonic Acc. Assoc., 52 Minn., 378, 54 N. W., 184.

While the law favors settlements, arbitrations as a means of peaceful and expeditious settlement are enforced only where they have been executed, or where the agreement to submit to arbitrators does not oust the courts of their jurisdiction. Hill v. More, 40 Me., 515; Contee v. Dawson, 2 Bland, 264; White v. Middlesex R. Co., 135 Mass., 216; Randall v. Am. Fire Ins. Co., 10 Mont., 340, 25 Pac. 953, 24 Am. St. Rep., 50.

Applying these principles to appellant's contention, it follows that if the contract provided, as seems to be contended, that the question of appellant's liability was to be submitted to arbitrators, the provision was void. The line of demarcation in the cases wherein such provisions have been either upheld or rejected is, if the thing to be submitted is the one of an undetermined and undisputed fact, as a condition precedent to an action upon a recognized legal liability, the agreement will be enforced. But if the fact is already fixed, e. g., the value of the prop-

erty, or the amount to be paid, the agreement to submit the
question of liability—the question of law—is invalid.   In
the case at bar the value or sum to be paid in event of total
loss is conclusively fixed.   It was proposed to submit to
arbitrators whether for that sum or value liability had at-
tached, or existed—a question purely of law, or, at least,
of law and fact.   The arbitrators could not have determined
it without deciding the question of law involved, i. e., when
is a total loss within the meaning of the statute?   Appel-
lant's position is that by the contract that question must
first be settled by arbitrators selected by the parties, instead
of by the courts created by the law—a proposition which we
think is against principle and precedent.   Numerous cases
hold that, under statutes similar to ours quoted herein, if
the question is one of total loss, the arbitration clause of
the policy can not be applied; for there is nothing to arbi-
trate that is the subject of arbitration.   Reilly v. Franklin
Ins. Co., 43 Wis., 449, 28 Am. Rep., 552; Merchants'' Ins.
Co. v. Stephens (22 R., 999), 59 S. W., 511, and cases therein
cited.

Counsel insist that until the extent of the damage or
loss was ascertained it could not be known whether the loss
was total, or partial only; that if it was but partial, then
the arbitration feature of the contract clearly, and under
all the authorities, applied. . That the parties might have
submitted the question of extent of damage or loss to ar-
bitrators in this case, we  do  not  doubt.    Their  award,
though, in our opinion, could have been used as a basis of
the settlement only in event the loss was partial.   If it was
total, no matter what may have been the value of the build-
ing (in the absence of fraud mentioned in the statute), the
liability of the insurer was fixed at the sum named in the
face of the policy; and the agreement to submit that ques-

tion to arbitration, being without consideration, and being contrary to the policy of the law as embodied in section 700, Kentucky Statutes, was not binding on the insured. The only one who took any risk by refusing the arbitration was the insured, for if the loss turned out to be only partial, then, without a fulfillment of the condition precedent (and it not being waived) appellee could have recovered nothing. Appellee took the burden and the risk of maintaining that the loss was total.

Furthermore, a careful inspection of the clause of the policy providing for the arbitration shows that it required the arbitrators not to determine the amount of loss or damage in fact, and under the terms of the statute, but to find the extent of the loss, to be estimated upon an entirely different basis, the one pointed out above in this opinion. This was the only arbitration asked for by appellant, or provided for in the contract of insurance. The policy of the State has been to close this very question of value of property totally destroyed. The reasons supporting this policy are well known, and are not of recent promulgation. Appellant's effort seems to be to have the law so construed that the parties by their contract may bind themselves in advance to defeat this policy of the law, and return to the very conditions sought to be corrected by the legislative action.

The circuit court properly decided that appellee's failure to submit its claim of total loss to arbitration was not available as a defense to that claim.

The instructions given are based upon former decisions of this court. Caledonian Ins. Co. v. Cooke, 101 Ky., 412; 19 R., 651, 41 S. W., 279; Palatine Ins. Co. v. Weiss, 109 Ky., 464, 22 R., 994, 59 S. W., 509; Aetna Ins. Co. v. Glasgow E. L. & P. Co., 107 Ky., 77, 21 R., 726, 52 S. W., 975;

Thuringia Ins. Co. v. Mallott, 111 Ky., 917, 23 R., 1248; 64 S. W., 991, 55 L. R. A., 277; Germania Ins. Co. v. Ashby, 112 Ky., 303, 23 R., 1564, 65 S. W., 611. We adhere to the principles announced in those cases.

One of the complaints on account of the trial court's rejecting evidence offered for appellant is that a letter written by appellant's adjuster to one White, whom it had selected as its representative in an effort to settle the loss, was not admitted. Mr. White had a conversation with County Judge Smith, of Bourbon county, relative to the loss, and handed the letter to Judge Smith, who read it. Some parts of the conversation then ensuing between White and Smith were admitted. It is claimed that the letter formed a part of the colloquy. It does not appear that anything was said about this particular letter in that conversation. The letter itself does not appear to be relevant as aid in any way in determining whether the loss was total or partial. At best it is a testimonial of appellant's fair intentions in the matter—a fact not in issue. We are of opinion that the letter was immaterial.

Appellant introduced several architects and builders as expert witnesses, who testified that in their opinion the building was not totally destroyed; that, on the contrary, by far the most of it could be utilized with perfect safety in rebuilding or repairing. They went into detail in describing the parts fit for that purpose. They had made out estimates of the work and material necessary, according to their opinion, to restore the building. The estimates noted the cost of the labor and material. Appellant offered these estimates in evidence, which were rejected—we think properly so. Then appellant asked the witness, and offered to prove, the cost. This was refused. Some courts have admitted this class of evidence as bearing on the question

whether the loss was total or partial. Ordinarily it seems that that fact might be shown in part in that manner. But under the statute (section 700) above, we are of opinion that such evidence would more probably mislead than aid the jury. To illustrate: If, as a matter of fact, the building could have been built new for $40,000, that fact was entirely irrelevant and immaterial under the statute. Therefore, if one wall alone stood, all other parts being without doubt destroyed, still the building could be restored for $40,000. Now would that evidence tend to prove that the building was not totally destroyed? We think not. The trial court allowed the witness to describe in minutest detail what was necessary to restore the building, and as to the percentage or proportion of it that was destroyed by the fire. The question of cost was alone excluded. In the rulings admitting and rejecting this evidence the trial court, in our opinion, was right.

The verdict was not flagrantly against the evidence. Indeed, there was much evidence to sustain it. There was also evidence, respectable in character, and considerable in extent, to the contrary. Photographs of the building taken during and after the fire are before us. They would seem to bear out appellant's theory that the building was not so injured as to be totally destroyed. However, this class of evidence must necessarily be inconclusive. To the eye it conveys an impression that the witnesses refute. Even some of appellant's witnesses admit that the condition of the walls was such that they must have been torn away down to the top of the first story, yet an examination of the photographs does not give the slightest intimation of that fact. The theory of appellee was, and that was the substance of its evidence, that the walls were sprung, cracked, and so impaired by water and heat that they were un-

safe for use in rebuilding. True, appellant's witnesses contradict this. But the photographs are without much value on that issue, manifestly.

We perceive no reversible error in the record, and the judgmnt is affirmed, with damages.