## Security Insurance Company v. Rosenberg.

(Decided December 7, 1928.)

(As Modified, on Denial of Rehearing, January 25, 1929.)

GALVIN & TRACY and HARMON, COLSTON, GOLDSMITH & HOADLY for appellant.

M. H. McLEAN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

By this suit the appellee sought a recovery against the appellant on a fire insurance policy covering a building which was owned by her in the city of Covington, and which she claimed had been totally destroyed by a fire which occurred on March 3, 1923. From a judgment entered on a directed verdict for her, the appellant prosecutes this appeal.

The real controversy in this case is whether the building insured was totally destroyed by the fire on March 3d or only partially so. It is conceded that a physical portion of the insured building was still standing after the fire, but that it was torn down the following April after having been condemned and ordered destroyed by the commissioners of the city of Covington. It is appellee's theory that the building was condemned because the fire had so damaged it as that the remaining portion of the building was a menace to the public's safety, and so a public nuisance. This was finally alleged by her in her fourth amended petition. When this fourth amended petition had been filed the appellant withdrew the various answers it had filed from time to time in response to the amended petitions as they came in, and in lieu thereof filed a reformed and substituted answer in 14 paragraphs, which, much after the fashion of the common counts in common-law pleading, set out these defenses: First, that the building as a matter of fact was a partial and not a total loss; secondly, that the conditions in the building which brought about its condemnation after the fire were not due to the fire; thirdly, that the appellee had procured the order of condemnation when by her policy she was required to do all she could to preserve the property after the fire; fourthly, that appellee was guilty of false swearing in making up her proof of total loss; and, fifthly, that the ordinances under which the commissioners of the city of Covington condemned the building were unconstitutional. Thereafter appellant filed two amended

answers which only further elaborated this reformed and substituted answer. A demurrer was sustained to paragraphs 10, 11, 12, 13, and 14 of the reformed and substituted answer as amended, and much of its other paragraphs were striken therefrom. Thereupon the appellee traversed what was left in the reformed answer as amended, and the parties went to trial on only the issue whether the building after the fire was a total or partial loss. To sustain her contention the appellee introduced the report of the building inspector, as he styled himself, although his technical title under the statutes and ordinances was "sanitary guard." That report reads as follows:

"Covington, Ky., March 7, 1923.

"Board of Commissioners, Covington, Ky.

"Gentlemen: I wish to call your attention to the Marx Building, 516-522 Madison Avenue, which was the scene of a recent disastrous fire. The front portion of the building, originally a hotel, has been remodeled one or more times, the elevator shaft from basement to roof consists of part brick walls and part wood walls, covered with metal, with wooden supports for the overhead cables and sheaves. This elevator shaft has unprotected openings to each story, from cellar up.

## "STAIRS.

"The stairways are of wood, and from first to second story are enclosed with one set of walls, and from second to the fourth story are enclosed in another set of walls, separated entirely from those leading from first to second story. This is a grave defect, and would constitute a continuous menace as long as this condition obtains.

## "BRICK PARTITION WALLS.

"From the second floor to the roof, inclusive. are of brick, and supported in first story with a system of metal columns and beams. These have been subjected to terrific heat during the recent fire, and their condition after the fire, as to safety, would be hard to express. There are numerous cracks in various parts of the remaining walls, some slight settle-

ment is observed in the front iron work, some of the upper floors have settled; whether this was done by the recent fire I can not say, but considerable damage has been done to floors, roof and walls by the recent fire, and the massive metal cornice outward over the Madison Avenue sidewalk three feet or more, the supports of which, as seen through holes which have been cut in the roof, do not appear to be any too good, after the years it has been exposed to the weather. To allow this building, divided up as it is by walls into small, almost inaccessible rooms, and filled with inflammable contents, such as household furniture usually is, would, in my opinion, be a grave mistake.

"In view of the above I feel justified in condemning this building, which has been more or less damaged, and ask your honorable body to concur in the same and order the building torn down to the ground.

"Respectfully submitted,

"(Signed)   A. B. DAILEY,
"Building Inspector."

She then introduced the minutes of the meetings of the commissioners of the city of Covington which showed that at a meeting of March 8, 1923, they concurred in the foregoing report of the building inspector, condemned appellee's building, and ordered it torn down; that at a meeting of March 16th, these commissioners rescinded their action of March 8th in regard to this building, and passed a resolution permitting appellee to reconstruct her building; and that at a meeting of April 12th these commissioners rescinded their action of March 16th and reinstated that of March 8th. Appellee also introduced some oral testimony which showed that the chief of the fire department and the building inspector had orally notified the appellee through her agent that they regarded the building as being unsafe and ordered it torn down. The appellee then rested. Thereupon the appellant moved for a directed verdict. Its motion was overruled. It then offered to prove by competent witnesses that the building was only partially destroyed by the fire of March 3d, that it could have been repaired and restored to its original condition, and what it would have cost to have restored the building to its former condition.

The court refused to permit the appellant to introduce this proof. Thereupon both parties made a motion for a directed verdict on the state of the record as it was. The court overruled the motion of the appellant, but sustained that of the appellee obviously on the theory that the condemnation of the building by the commissioners of the city of Covington, to which we have referred, was conclusive on all the parties to this litigation, and fixed their rights inter se. The judgment followed this directed verdict as stated.

It will be helpful in disposing of this case, first, to direct our attention to some controlling principles of law:

(a) If as a matter of fact appellee's building was so far injured or damaged by the fire of March 3d as that its identity or specific character as a building was thereby destroyed, or its parts and materials were thereby rendered unsafe or without value as they remained after the fire for the purpose of reconstructing the building substantially as it existed before the fire, the loss was a total one within the meaning of the policy. In the case of Thuringia Ins. Co. v. Malott, 111 Ky. 917, 64 S. W. 991, 23 Ky. Law Rep. 1248, 55 L. R. A. 277, we said:

"There is total loss of a building, when caused by fire or in consequence of fire, when the building as such has been so injured or damaged as to destroy its identity and specific character as a building, though much or any quantity of the material originally composing it is not consumed; or when a building has been so damaged by fire, or by reason of fire, that its character as a building has been so impaired as to be no longer safe and fit for use as such, and in consequence the material would have to be taken down and the building reconstructed, there is a total loss of that building, within the contemplation of the statute; or where so much of the material of which the building was made has been destroyed by fire, or by reason of fire, as to leave what remained of no material value as a building, although it may have value as debris or salvage, there has been a total loss of that building, within the contemplation of the stat·ute. If the remaining part of the building can, by repairing it, be restored to the former condition of the original just before the fire, the loss would be a

partial one; but if, instead of repairing a damaged part, substantially a reconstruction of the whole would be necessary to restore the building, then the loss is total."

See, also, Palatine Ins. Co. v. Weiss, 109 Ky. 464, 59 S. W. 509, 22 Ky. Law Rep. 994; Hartford Fire Ins. Co. v. Bourbon County Court 115 Ky. 109, 72 S. W. 739, 224 Ky. Law Rep. 1850; Cf. Liverpool & London & Globe Ins. Co. v. Rosenberg, 213 Ky. 184, 280 S. W. 924.

(b) Although the building was as a matter of physical fact only partially destroyed by the fire, yet, if it could not be repaired or restored on account of the building laws or regulations in force at the time of the fire, the loss is a total one within the meaning of the policy. Brady v. Northwestern Ins. Co., 11 Mich, 425; Williams v. Hartford Ins. Co., 54 Cal. 442, 35 Am. Rep. 77; Larkin v. Glens Falls Ins. Co., 80 Minn. 527, 83 N. W. 409, 81 Am. St. Rep. 286; Monteleone v. Royal Ins. Co., 47 La. Ann. 1563, 18 So. 472, 56 L. R. A. 784. The reason for this rule is that a fire insurance policy is a contract of indemnity, and so, if the restoration of the injured building is forbidden by law, its value is totally annihilated, and the loss is properly held to be a total one.

(c) The ordinances of the city of Covington providing for a condemnation of fire menaces and dangerous buildings and their abatement, without a prior opportunity being afforded the property owner to be heard on the question, are not unconstitutional, since, if the order of condemnation is improvidently entered, the owner has his remedy by injunction to enjoin its enforcement, or, if the alleged fire menace or dangerous building has been abated, the owner may, by an action against those responsible for the abatement, recover such damages as he may have sustained by reason of the unwarranted abatement. In the case of North American Cold Storage Co. v. City of Chicago, 211 U. S. 306, 29 S. Ct. 101, 53 L. Ed. 195, 15 Ann. Cas. 276, it was held that due process of law is not denied the owner or custodian of food in cold storage by a municipal ordinance under which such food, when unfit for human consumption, may be summarily seized, condemned, and destroyed by municipal officers without a preliminary hearing being afforded the owner or custodian, since such owner or custodian may by an appropriate action hold those who seized and destroyed his food responsible for such seizure and destruction if

such food as a matter of fact was not unfit for human consumption; the decision of the municipal authorities not being conclusive of the question. In this case may be found an excellent collection and examination of the authorities supporting this principle and why a preliminary hearing need not be given in cases of this character; the reason being, in short, that the necessities of the case and the emergency of the matter of such nuisances as fire menaces and tottering walls which threaten to fall at any moment with possible hurt to many obviate the requirement of a preliminary hearing, the owner being relegated for his due process of law to an appropriate action after the abatement of the alleged nuisance for the illegal abatement if it was such.

(d) An order of condemnation and abatement, such as was made in this case, is conclusive neither on the property owner nor on his insurer. As we have seen above, the property owner may by an appropriate action question the findings of fact upon which it rested. A fortiori, if the insurer is no party to the proceeding in which the condemnation was had, it too may question the findings of fact upon which the condemnation rests. Its obligation is to idemnify the party insured against loss occasioned by fire. If the loss was not occasioned by the fire, but by an improvident order of condemnation, the insurer is not responsible under its contract, for it did not insure against such loss. If it be no party to the condemnation proceeding, it is not bound by the order, and hence when the question arises it may show that the condemnation was improvidently ordered.

(e) When the insured shows that his building has been damaged by fire and that the proper authorities have condemned what was left of the building because of its condition occasioned by the fire, the burden then shifts to the insurer to show, in order to avoid a liability for a total loss, that the facts did not justify the authorities in condemning the remaining building, and that it could have been repaired and restored without violating any building law or regulation in force at the time of the fire. The presumption of duty properly performed, which attaches to public acts of public officers, creates the prima facie case in favor of the insured and the duty on the part of the insurer to overcome it by competent proof to the contrary. See Larkin v. Glens Falls Ins. Co., supra: Monteleone v. Royal Ins. Co., supra; and compare Chauvin v. Superior Fire Ins. Co., 283 Pa. 397, 129 A. 326.

(f) Under the provision in the standard form of fire insurance policies that the policy shall be void in case of any fraud or false swearing by the insured touching any matter relating to the insurance, before a false statement under oath in proofs of loss will vitiate a policy of insurance, such statements must be intentionally false and disclose a purpose to fraudulently overvalue or contain a statement of items having no existence. A mere innocent mistake or an exaggerated estimate of value will be insufficient for that purpose. Hanover Fire Ins. Co. v. Coffman, 218 Ky. 568, 291 S. W. 725; Western Assurance Co. v. Ray, 105 Ky. 523, 49 S. W. 326, 20 Ky. Law Rep. 1360; Connecticut Fire Ins. Co. v. Union Mercantile Co., 161 Ky. 718, 171 S. W. 407. Likewise a statement of a conclusion bona fide drawn from a given state of facts is not false swearing because, forsooth, the insurer or even the courts later draw a different conclusion from that state of facts, since the element of an intention to commit a fraud is absent, and from the authorities above quoted that is necessary in order to vitiate a policy under the provision here invoked. In Joyce on Insurance (2d Ed.) p. 3781, it is said:

"It is not only necessary to prove that the swearing was false but that it must also be proved that it was done willfully, knowingly and with intent to defraud."

Applying the foregoing principles to the instant case, it is patent that the trial court erred in ordering the directed verdict it did. In the first place, the order of condemnation, when read only, as it was, in the light of the report of the building inspector on which it was based, does not clearly show that the building inspector considered the building unsafe because of conditions created by the fire. There is much in his report which, unexplained, reasonably supports the theory that the building was unsafe prior to the fire and even then subject to condemnation as a fire menace and dangerous habitation. Of course, if the injuries caused by the fire, combined with the antecedent defects, made the repairs impracticable or illegal, the insurer is liable as for a total loss. But if the condemnation was caused by conditions having no connection with the fire, the insurer is liable only for the part destroyed by the fire. On the next trial, the appelee will be permitted to show, if she can, that the com-

missioners of Covington entered the order of condemnation in question because of conditions which they considered were created wholly or partially by the fire rendering repairs or a restoration impracticable or illegal, in which event the burden will shift to the appellant to show that the order of condemnation was not supported by the facts and the building was in truth only partially destroyed within the meaning of such term as hereinbefore defined.

In the second place, the court erred in refusing to permit the appellant to introduce the evidence it had to show that the building was in fact only partially destroyed and was capable of repair or restoration legally. As the order of condemnation was only prima facie evidence of the facts upon which it was based, conceding them to fully support appellee's theory that the condemnation was caused by conditions created by the fire, the appellant had the right to rebut, if it could, such prima facie case, and the evidence it offered tended to do that.

On the return of this case, the court will, on proper motions of the parties, make such rulings upon the pleadings as they now are in the record as to bring them in line with contentions of the parties and the rulings herein contained upon them.

The judgment of the lower court is reversed, with instructions to grant the appellant a new trial and for further proceedings consistent with this opinion.