## London & Provincial Marine & Fire Insurance Co. of London, England, v. Mullins et ux.

(Decided March 16, 1934.)

HORACE W. ROOT for appellant.
EMILE RIVARD for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, London & Provincial Marine & Fire Insurance Company of London, England, is a corporation and is and was at the times herein mentioned authorized to insure against fire risk in this commonwealth. On July 26, 1927, it issued its policy to appellees and plaintiffs below, D. D. Mullins and wife, whereby it insured them against loss by fire to a building they owned in Kenton county, Ky., to the amount of $4,000, the policy running for a period of five years from that date. Later another policy was taken out by plaintiffs on the same property with the Lafayette Fire Insurance Company of New Orleans, for the amount of $1,000, making the total amount carried $5,000. In August, 1931, some forty-nine months after defendant issued its policy, the property was totally destroyed by fire. The two insurers and the insured agreed that from the time of the writing of the policy to the date of its destruction there was produced a 20 per cent. depreciation in its value as fixed in the policy, and they agreed to settle the loss on that basis, which was the payment of a total sum of $4,000, and it was apportioned between the two insurers by defendant paying $3,200, and the Lafayette Fire Insurance Company paying $800. Receipts were taken for those amounts and the policies surrendered and canceled.

Afterwards plaintiffs brought this action in the Kenton circuit court against defendant, alleging in their petition the fact of the issuing of its policy, the destruction of the property by fire while the policy was in force, the payment to them by defendant of the $3,200, and that under the provisions of section 762a-22 of the 1930 Edition of Carroll's Kentucky Statutes (commonly known as our "Valued Policy" Statute), defendant still owed it the remaining portion of its policy, or $800, for which amount judgment was prayed. Defendant answered in which it denied its liability, and averred (with more elaboration) the facts we have recited. Plaintiff submitted a demurrer to that answer which the court sustained and judgment was rendered against defendant

for the amount claimed in the petition upon its declining to plead further, and this appeal by it calls in question the propriety of the court's ruling upon plaintiff's demurrer.

The applicable portion of the section of the statutes referred to, says: "That insurance companies that take fire or storm risks on real property in this Commonwealth shall, on all policies issued after this act takes effect [in case of total loss thereof by fire or storm], be liable for the full estimated value of the property insured, as the value thereof is fixed in the face of the policy; and in cases of partial loss of the property insured, the liability of the company shall not exceed the actual loss of the party insured; *provided, that the estimated value of the property insured may be diminished to the extent of any depreciation in the value of the property occurring between the dates of the policy and the loss;* and provided further, that the insured shall be liable for any fraud he may practice in fixing the value of the property, if the company be misled thereby." (Our italics.)

Before disposing of the merits of the case, the limited question for determination should be kept in mind so as not to confuse it with questions involved and determined in some cited domestic and foreign cases by plaintiffs' counsel. To that end it should be remembered that the question presented involves the proper construction and effect of the italicized portion of the statute, and has nothing to do with *inserted* provisions of a policy embraced by its provisions, i. e., valued policies upon real estate.

The cases cited and relied on by counsel involved the right of the insurer to *insert provisions in its policy,* the effect of which is to qualify and modify the mandatory terms of the statute so as to allow the insurer the partial defense of reducing the amount named in the policy for causes other than "any fraud he [insured] may practice in fixing the value of the property, if the company be misled thereby." Some of the cases so relied on by counsel are Germania Insurance Co. v. Ashby, 112 Ky. 303, 65 S. W. 611, 23 Ky. Law Rep. 1564, 99 Am. St. Rep. 295, Dixie Fire Insurance Co. v. Minick, 226 Ky. 498, 11 S. W. (2d) 141, and Horn v. Atlas Assurance Soc., 241 Ky. 226, 43 S. W. (2d) 675. Other domestic ones are cited in those opinions, and still

others may be found in note 17 to the text of 26 C. J., page 355. Among the foreign cases cited in that note is Daggs v. Orient Insurance Company, 136 Mo. 382, 38 S. W. 85, 32 L. R. A. 227, 58 Am. St. Rep. 638. That case was appealed to the Supreme Court of the United States, and its opinion therein is reported in the case of Orient Insurance Co. v. Daggs, 172 U. S. 557, 19 S. Ct. 281, 43 L. Ed. 552. Some of the domestic cases also found in that note are Hartford Fire Insurance Co. v. Bourbon County Court, 115 Ky. 109, 72 S. W. 739, 24 Ky. Law Rep. 1850, and Caledonian Insurance Co. v. Cooke, 101 Ky. 412, 41 S. W. 279, 280, 19 Ky. Law Rep. 651. Those cases uphold the constitutionality of valued policy statutes against attacks made upon them as violating certain provisions of both Federal and state Constitutions. It could serve no useful purpose to repeat in this opinion the arguments made in support of such contentions, nor the reasoning of the courts in declining to adopt them, since that information may be readily obtained by consulting those cases. Suffice it to say that the conclusions reached by all the courts before which the question has been presented since the adoption of such statutes are (1) that they violate no provisions of either the Federal or state Constitutions, and (2) that, since they were enacted in furtherance of what was deemed a healthy public policy, it is incompetent to evade their provisions, either directly or indirectly, by the insertion of stipulations in the policy having a direct tendency to do so.

Among such evading provisions is the one providing for arbitration in case of a total loss; the one ordinarily referred to as the "three-fourths" valuation clause, and, others, the enforcement of which would reduce the amount of recovery below the valuation of the property fixed in the policy, and which it readily will be seen is an entirely different question from either total or pro tanto defenses *provided for in the statute.* We have not been referred to any case, either domestic or foreign, nor has our investigation revealed any involving the limited question here presented, and which is: The correct interpretation and application of the proviso contained in the statute permitting the estimated value of the property insured to be diminished to the extent of any depreciation occurring between the dates of the policy and the loss. However, there are expressions in all of the cases (including the domestic

ones) in which the court recognized the right of the insurer under that proviso to reduce the fixed valuation of the insured property by its percentage of depreciation that had occurred from the date of the insurance contract to that of the loss; but in none of them does that question seem to have been *directly presented*. Such recognition on the part of the court was expressed in its general discussion of the particular statute involved.

As illustrating the comments of this court in cases involving the statute (including the above proviso), we take this somewhat lengthy excerpt from the opinion in the Cooke Case, supra: "The history of this legislation is that, at the time this act was passed by the legislature, there was another bill before it, providing, among other things, 'that insurance companies that take fire or storm risks on real property in this commonwealth, in settling their liability on policies issued after this act takes effect [in case of total loss thereof by fire or storm], shall, when the cash value of the property insured is adjusted at a sum less than the amount on which premium has been paid, refund to the assured the pro rata of said premiums paid on the difference between the amount on which premiums have been paid, and the cash value of the property at the time of the fire, as ascertained by the adjustment.' See House Journal 1891-92, p. 1035. This was offered as a substitute to the 'Follis Bill,' but was voted down, and the 'Follis Bill' became and is the law. It is perfectly evident that the legislature intended to remedy the evil of overvaluation in insurance, and, in doing so, followed the example of many other states of the Union, by making the insurer responsible for overvaluation; and, to do this, the remedy was and is to compel the insurer to pay the full amount [in case of total loss] for which they write their policy, and on which the premium is calculated and collected, *subject only to be diminished by any deterioration in value between the dates of the policy and the loss,* and providing, further, for relief for fraud on the part of the insured where the insurer is deceived thereby. In other words, the law says to insurance companies: 'If you want to pay only a fair price for property that may be destroyed, you must adjust that matter before the policy is issued; and, if you fail so to do, you will be the loser, as the law fixes the amount you are to pay by the amount you collect premium on, *subject to*

*deteriorations in value after the date of the. policy."*
(Our italics.)

It thus appears, as the opinion points out, that the involved statute (762a-22), or its predecessor, was what was known as the "Follis Bill," and that a substitute had been offered therefor, but which was voted down, and from the excerpt taken from that opinion it will be seen that the proviso, supra, with reference to diminishing the amount to be recovered in a valued policy by the amount of deterioration therein referred to, refers only to cases where there is a total loss and, necessarily, does not apply to partial losses, since there is no *fixed* amount of a partial loss stated in the policy, and it could not be done, because it is always (and is necessarily so) the amount of the damage produced by the fire at the time of its occurrence. The other domestic opinions, as well as the foreign ones, make similar references to the "diminishing proviso," and say that it applies only in cases of a total loss, although that specific question may not have been presented in the case under consideration. Such references, though made under facts not involving the direct question here presented, are, to say the least, most persuasive of the true and correct interpretation of the proviso, and the intent and purpose of the Legislature in enacting it. See, also, the text in 26 C. J., pp. 354, 355, sec. 453, in which it is said that under statutes similar to the one under consideration, "the insurer may lessen the amount of its liability by showing that by depreciation in the value of the property between the time of the issuance of the policy and the loss, the value is less than the amount of the insurance named in the policy."

But without that text, or such persuasive comments, and viewing the statute as if no judicial expressions had ever been made concerning it, we see no escape from the conclusion that the "diminishing proviso" creates a pro tanto defense and which is one created *by the Legislature* and not *by the parties* through stipulations in the policy contract. However, it should ever be borne in mind that the minuend in the calculation of the amount due, in valued policies where depreciation is shown, is always the amount fixed in the policy (unless it may be defeated under the provision with reference to fraud in its procurement), and the subtrahend is the amount that the evidence shows, or that the parties may agree upon, as the depreciation.

In this case the answer to which plaintiffs' demurrer was sustained alleged both depreciation, and the agreed amount of it, and the settlement was made after subtracting it from the fixed valuation in the policy, which we conclude was strictly, in accord with the statute, and that the court erred in sustaining the demurrer thereto.

Wherefore, the judgment is reversed with directions to set it aside and to overrule plaintiffs' demurrer to the answer, and for other proceedings consistent with this opinion.