DUNCAN *v.* PREFERRED MUT. ACC. ASS'N OF NEW YORK.

(*Superior Court of New York City, General Term.* March 2, 1891.)

1. ACCIDENT INSURANCE—DUE DILIGENCE—QUESTION FOR JURY.
   In an action on an accident insurance policy it appeared that the insured, while crossing railroad tracks in going to the station, when part way over had his view obstructed of the further track, and, as he was approaching it, was called to by an employe of the railroad company to "look out for the express," and was shouted to by others, and, hastening forward, was killed by the express train. *Held,* that the question whether he had used "all due diligence for personal protection," as required by the policy, was for the jury.

2. SAME—VOLUNTARY EXPOSURE.
   An act is not voluntary, within the terms of the policy, excepting loss "from voluntary exposure to unnecessary danger," if it is such as a man of ordinary prudence would be induced to do by the circumstances.

3. SAME.
   The meaning of the word "accidental," as used in the policy, is for the jury.

4. SAME.
   The mere crossing of railroad tracks for the purpose of reaching the railroad station is not within the exception in the policy of the hazard "of standing or walking on the road-bed or bridge of any railway."

5. SAME—VIOLATION OF RULES OF RAILROAD.
   Under the defense that deceased was killed "while or in consequence of violating the law or the rules of a company" within an exception in the policy, it may be shown that there was a custom of crossing the tracks at the place in question to reach the station.

6. SAME.
   The charge "that, if the jury find that plaintiff's assignor was passing the crossing in question upon an express or implied invitation or inducement of the railroad company, or by its permission, he was rightfully there," is not erroneous where it appears from the rest of the charge that it was meant "rightfully" as regarded the railroad company.

Appeal from trial term.

Sebastian Duncan sued the Preferred Mutual Accident Association. From a judgment entered upon verdict of jury, and from order denying motion for new trial, made upon judge's minutes, defendant appeals.

Argued before SEDGWICK and TRUAX, JJ.

*George W. Sill,* for appellant.  *Paul Wilcox, (David D. Duncan,* of counsel,) for respondent.

PER CURIAM. The plaintiff sues as the assignee of a policy of insurance made by defendant, insuring one Jansen, the assignor, "against bodily injuries effected through external, violent, and accidental means." For a reversal it is urged that the testimony incontrovertibly proved that Jansen's death resulted from his own negligence. The policy provided that "the member is required to use all due diligence for personal protection." The death of Jansen was caused by his being run down by a steam locomotive and its train. The train was moving upon a track, close to the platform of a station. This track was designated on the trial as "No. 1." South of that track, at a short distance from it, and about parallel to it, was another track, called "No. 2," and again another track, parallel, designated as "No. 3," and still to the south were several other tracks. It may be assumed that Jansen approached the place from the outside of all these tracks,—from the south. Whether it was a negligent act to approach in this way, and to cross until he reached track No. 3, is not material in this case, for the testimony shows that in fact he was in no danger from the approaching train until he reached track No. 3, as the jury might find. The jury might find under the evidence that when he reached track No. 3 he could not see the approaching train if he had looked, as there were cars standing upon that track. If he proceeded to track No. 2, and crossed it without looking for a train, and there were no other facts for a jury to find whether he was excusable for not looking and for going on, the court

perhaps might hold that his negligence caused the accident in part.  But there were other occurrences which made up the circumstances in view of which it was to be determined whether the deceased was negligent.  As he was upon track No. 3, Downey, an employe of the railroad, as he was on the platform, saw Jansen coming towards the platform.  The train that afterwards struck Jansen was coming towards the platform at great speed, and Downey called out in a loud tone: "Look out for the express."  Jansen was then 30 feet away, and might have heard.  Simultaneously, another employe shouted to Jansen from one side.  It might have been found that also another employe was then calling to Jansen from behind him.  Forthwith Jansen, who had been walking rapidly, or who was upon a half trot, took a still faster pace, crossed track No. 2, and when he was crossing the next track was struck.  The jury, in finding what course would be taken by a prudent man, would be obliged to ascertain what would be the effect upon such a man of the calls to him under the circumstances, and whether their meaning to him would be to stop where he was, or to proceed at a fast rate, and that then he would be safe.  It is to be noticed that Jansen was not told to stop.  That the directions to him may have been confusing, as some came from one side of him, and others, the jury might find, came from a track over which he had passed.  On the whole, a jury might believe that a man of ordinary prudence and apprehension would be led to believe that it was a safe course to hurry, and get to the platform as quickly as he could.  It was for the jury to find whether in taking that course it was imprudent not to stop at track No. 2, and look for the train.  There was sufficient testimony to call for a verdict of the jury on the question of whether the death resulted from the negligence of the insured.  By the policy the company were not to be liable if the death resulted "from voluntary exposure to unnecessary danger."  The appellant argues that the testimony disclosed a breach of this condition by the deceased.  At this point attention will be given only to the term "voluntary."  If there were not a voluntary exposure, there was not a breach.  The word, of course, in some way refers to the action of the will.  Used, as it is in the policy, by an insurance company, to be understood by men of ordinary information and intelligence, it does not involve the opposing views of philosophers as to free will or determinism; but by all it is considered that the will acts from motives springing from things external to the will, and that such motives have an influence more or less controlling upon the will, and tending to induce it to act in a certain way.  In common apprehension, in respect to the ordinary transactions of life, if the external circumstances would have such a controlling influence upon a man of ordinary prudence and intelligence that he would take a certain course, that course would not be considered voluntary on his part.  His course would not be freely taken.  It would be controlled by external circumstances.  In this case it was a question of fact for the jury as to the extent to which Jansen was influenced or controlled by the external circumstances; and the jury would be bound to find that his act was not voluntary if it was such as a man of ordinary prudence would be induced to do by the circumstances.

It is further maintained for the appellant that the injury was not "accidental."  The meaning of this word, however, seems to be, not brought about by the purpose or intention of the insured.  This was at least for the jury to pass upon.  The policy excepts the hazard "of standing or walking on the road-bed or bridge of any railway."  This does not include such a crossing of the track as the deceased made.  To stand or to walk on a road-bed implies some sensible duration of the act, and does not describe a mere crossing, made for a justifiable purpose, such as reaching the station.  Common language distinguishes between standing, walking, and crossing.  On the trial the following questions were asked and answered, under exception by defendants: "*Question.* Has it been the custom, to your knowledge, for

people to reach the station in Stamford by other routes than going by the regular road-way? *Question.* Do you know whether there was a general custom, at this time, for people to cross those tracks from Collender billiard factory to the station?" These questions were properly allowed. They tended to draw out matters relevant to the defense in the answer, under a clause of the policy that Jansen was killed "while or in consequence of violating the law or the rules of a company," etc. This supposed violation was crossing the tracks. It was some evidence of the rule or regulation of the company that the tracks had been used for crossing by people generally. The court did not charge erroneously "that, if the jury find that plaintiff's assignor was passing the crossing in question upon an express or implied invitation or inducement of the railroad company, or by its permission, he was rightfully there." It is apparent from the rest of the charge that this meant and was understood to mean "rightfully" as regarded the railroad company. It was involved in the facts to be passed on to consider whether Jansen was a trespasser, among other things, as bearing upon his conduct. There was an exception to the charge that plaintiff's assignor, in crossing the tracks when he did, was not a trespasser, and the plaintiff has a right to recover if the injury complained of was not caused by want of ordinary care. The evidence established the fact that Jansen was not a trespasser. The remainder of the part of the charge, if considered with the rest of the charge, was not injurious to the appellant, even if it be, when taken by itself, not correct. The court was correct in charging that to establish the defense that Jansen met his death "by voluntary exposure to unnecessary danger the jury must find that the act of so exposing himself was known, or ought to have been known, to him, and that his crossing the track was done voluntarily, with the full knowledge of the danger." There seem to be some words inadvertently omitted from the charge as printed in the case. The charge means that to sustain the defense the deceased must have known or ought to have known the danger, and that his act was voluntary, and with the knowledge of the danger that he had or ought to have had. The deceased did not voluntarily expose himself to danger if he did not know or was not bound to know the existence of that danger. The court was asked to charge that, if Jansen heedlessly and unnecessarily exposed himself to danger of injury, the plaintiff could not recover. The court was not called upon to charge in these words. It had held, for the purpose of the charge, that the act of Jansen was voluntary, and had explained that, to be voluntary exposure, Jansen must know or should have known that the danger was present. The court was right in refusing to charge that Jansen was bound to exercise more than ordinary care, holding that the care should have been such as a prudent man would have used under the same circumstances. Judgment and order affirmed, with costs.