JAMISON, Respondent, v. CONTINENTAL CAS-
UALTY COMPANY, Appellant.

St. Louis Court of Appeals, February 2, 1904.

1. **ACCIDENT INSURANCE:** Pleadings: Sufficiency of Petition. In an action on an accident insurance policy, where the petition alleges that the insured sustained bodily injuries through external, violent and purely accidental causes, resulting in death, in that while he was employed as a bridgeman for a railway company, he "was struck upon the head with some hard substance, inflicting a mortal wound," the language was precise and full enough to constitute a good averment that the insured met death by an "external, violent and purely accidental cause."

Jamison v. Continental Casualty Co.

And, though the averment is followed with the allegation: "A more particular description of the circumstances of said accident can not here be given because they are to the plaintiff unknown," that does not make the petition insufficient.

2. ———: **Burden of Proof.** In an action on an accident insurance policy, where the evidence showed an accidental death of the insured, and the defense relied upon was that the liability was only for the minimum rate fixed by the policy, because the deceased met his death from "unnecessary exposure to danger or to obvious risk of injury," as conditioned in the policy, the burden was on the defendant to show that the insured met his death in a way that would bring into operation the minimum indemnity clause.

3. ———: **Unnecessary Exposure.** The evidence showed that deceased, who was stationed at a bridge to flag trains approaching it, went to his station one night and the next morning his body was found a short distance from the track. Blood stains were traced from there to the track where his hat was found on the track cut in two. Just before his death and while in a semiconscious state, deceased stated that, he had been struck by the train while asleep. *Held,* the deceased may or may not have been exposing himself to unnecessary danger, as defined by the terms of the policy, and it was a question for the court sitting as a jury to determine whether he was or not.

4. ———: ———: **Declarations of Insured.** Where the evidence relied on by the defendant to show that the deceased met his death from having gone to sleep on the track where he was struck by the train, were the statements of deceased made just before his death, when in a semiconscious condition, in answer to suggestive questions which had to be repeated, so that it was doubtful if he understood what was said to him, such statements do not establish the fact so conclusively as to make it the duty of the appellate court to determine it contrary to the finding of the trial court.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*L. D. Grove* for appellant.

(1)  The petition does not state facts which will warrant the judgment rendered in this case; in this, that it fails to state that the mortal wound from which death resulted, was received from accidental causes, but disclaims all knowledge as to how the wound was received. Laessig v. Protective Association, 169 Mo. 280; Bank v. Fisher, 55 Mo. App. 53.  (2)  The case was tried upon the theory that the burden of proof was on the defendant.  This is the theory of the plaintiff in his pleadings, and seems to have been the theory of the court, as appears from this record.  This was an erroneous theory. When there are facts proven, which reasonably account for occurrence, all presumptions of fact which could otherwise have been indulged in, are removed.  Brownlow v. Wallace, 61 Mo. App. 124.  (3)  There is no presumption of law, that the wound causing death in this case was from accidental causes, from the fact alone, that he was struck by a moving train, as was assumed in this case.  The insured was bound by the condition of his contract; that he would not unnecessarily expose himself to danger, under penalty of forfeiting rights to the larger amount named in the policy. Overback v. Ins. Co., 94 Mo. App. 453.  (4)  If the insured went to sleep on the railroad track, knowing that trains were likely to pass over the road, that act forfeited the right to receive—in case of being killed— more than one hundred dollars; this was the terms of his contract.  If insured unnecessarily placed himself so near a moving train, as to be hit thereby, this act was a forfeiture of his right to recover more than one hundred dollars, if killed thereby, for he had so agreed in his contract.  Van Back v. Railroad, 171 Mo. 338; Errickson v. Railroad, 171 Mo. 647.

*Lamar, Barton & Lamar* for respondent.

(1)   Appellant complains for the first time in this court that plaintiff's petition does not state that the mortal wound was accidentally inflicted.   This contention is not well founded, for the following reasons:   (a) The petition uses the exact language of the policy, brings the injury within its terms, and follows an approved form.   VanCleave v. Union Cas. & S. Co., 82 Mo. App. 672.   (b)   Defendant introduced evidence upon this issue, tried the case as though the allegation had been made, and can not now complain of its absence. Sawyer v. Railroad, 156 Mo. 476 *et seq.;* R. S. 1899, secs. 659 and 865.   (c)   This allegation may, at least be clearly inferred from what is stated, and after verdict this inference will be made.   McDermott v. Claas, 104 Mo. 14.   (d)   The answer "admits that Oscar Jamison received a wound in his head which caused his death, as alleged in the petition;" states that the injury was produced by a train striking him, and refers to the occurrence as an accident.   By so doing, it expressly aids the petition on this point.   Bliss on Code Pleading, sec. 437; Summers v. Fid. Mut. Aid Assn. 84 Mo. App. 609.

(2)   Complaint is also made that "the petition does not state sufficient facts to warrant a judgment beyond the sum of one hundred dollars."   We suppose this is intended to assert the rule that plaintiff's petition should have negatived the limitations and exceptions in the policy, as to the matters set up in the answer.   It is useless to cite authorities to show the fallacy of this position.   Meadows v. Ins. Co., 129 Mo. 90.   (3)   Complaint is also made that "the case was tried upon the theory that the burden of proof was on the defendant." In the first instance, unquestionably, the burden was on the plaintiff to establish the accidental death, unless it was admitted by the pleadings, which we think was done.   DeZell v. Fid. & Cas. Co., 78 S. W. 1118.   (4)

An unintentional and involuntary exposure will not help defendant. Deceased must have known of the danger and intentionally exposed himself to it. Niblack on Ben. Soc. & Acc. Ins., 708; 1 Cycl. Law and Proc., 300 The burden of proving the limitations and exceptions set up in the answer, is upon defendant. 50 Am. St. Rep. 427 and note; 1 Cycl. of Law & Proc., 290. After verdict every reasonable inference will be drawn in favor of the judgment. (5) Bearing in mind the nature of this exposure and the burden of proof we will consider the evidence upon this issue. Its unsatisfactory character is demonstrated by the fact that defendant in this court is unable to say whether deceased's negligence was sleeping on or standing too near the track, and it takes this double position. The fact that his body was found mangled near a railroad track is not sufficient to establish this exposure and the other evidence does not, in any reasonable way, point to it. Much less with that certainty authorizing the court to declare as a matter of law that deceased did so expose himself.

GOODE, J.—The plaintiff sued an accident insurance company, on a policy of insurance to recover one thousand dollars. The policy was taken by Oscar Jamison, in favor of his father, the plaintiff. The contract contained, among other things, a stipulation that the company would pay to the plaintiff one thousand dollars if the insured, during the life of the policy, should meet death by external, violent and purely accidental means. The deceased was employed by the Gulf, Colorado & Santa Fe Railroad Company and was killed, presumably, by being struck by a train. He was a bridge carpenter, but had been detailed to flag trains and see that their speed was reduced to four miles an hour before they passed over the company's bridge No. 266. At six o'clock in the evening of April 15, 1902, he left Sanger, a station on the railroad in the State of Texas, with orders to go to the bridge and flag all trains

that came along. He was not seen again until the next morning and was then found lying about fifty feet from the west side of the bridge and twenty feet south of it. He had a large wound in the back of his head, bruises on the left side of it and on his right leg between the hip and the knee. There was evidence to show that he tottered to that spot after being struck by the train. Blood was detected on the ties near the bridge and footprints and blood stains were traced from the track to where he lay. His lantern was near the ties and his hat on the track cut in two.

The answer, besides a general denial, pleaded that the deceased was sent to the bridge to flag trains, which duty required him to keep awake and to stand on the east side of the bridge; but that he unnecessarily exposed himself to danger and to obvious risk of injury by going to sleep on the track, or so near the track as to be struck by a passing train.

1. The point is made against the petition that it does not state the mortal wound was received by accident, but on the contrary disclaims any knowledge of how it was caused. The petition states that on the day mentioned the "insured sustained personal, bodily injuries, through external, violent and purely accidental causes within the terms of said policy; which injuries solely and independently of all other causes, resulted in the death of said Oscar Jamison within ninety days of the accident, to-wit, within two days thereof, in that while he was employed as a bridgeman, as aforesaid, he was struck upon the head with some hard substance inflicting a mortal wound, from which he, Oscar Jamison, died on the —— day of April, 1902." That language is precise and full enough to constitute a good averment that the insured met death by an "external, violent and purely accidental cause." The only basis for the attack on the petition is this sentence following the above allegation: "A more particular description of the circumstances of said accident can not here be given

because they are to the plaintiff unknown." The petition avers a mortal wound in the head, accidentally received, caused the death of the insured and ought not to be held insufficient because it goes further and states that the pleader was ignorant of the circumstances of the tragedy. The pleading was proof against an attack before verdict. But none was made until after verdict, when the petition is to be more generously regarded and no requirement imposed except that it must be inferable from its express averments that the deceased was killed by accidental violence. Munchow v. Munchow, 96 Mo. App. 553. Unquestionably, enough is stated to justify that inference, if indeed, the fact is not positively alleged; and we think it is alleged.

2. The principal defense rests on a term of the policy which stipulated that the amount to be paid if the insured lost his life, or received any of certain designated injuries "from unnecessary exposure to danger or to obvious risk of injury," should be one hundred dollars. The casualty company tendered that sum and contends that thereby it fully discharged its liability, as the evidence conclusively established that the deceased was killed from exposing himself to unnecessary danger and to a risk which was obvious. This contention raises these questions: What is the meaning of the term of the policy invoked as a defense? Is the inference inevitable from the evidence, that the deceased came to his death under circumstances that make the provision control the company's liability?

It was not the intention of the parties to the contract of insurance to exempt the company from payment of the maximum indemnity—one thousand dollars—if death resulted from a hazard incident to the duties of the insured as a bridgeman. This appears from the first clause of the policy, which says the insured "is entitled to indemnity on the basis of his liability to accident in the occupation of bridgeman, in the event of personal, bodily injuries." By virtue of that provis-

ion all casualties to which the insured was exposed in the performance of the duties of a perilous avocation plainly came within the scope of the agreement to pay the full indemnity in case of accidental death.

The first point of doubt is as to what sort of negligence on the part of the insured, contributing to his death, would entitle the company to pay the minimum liability, and whether merely inadvertent conduct would be sufficient to do so, or only a conscious incurring of needless risk. Apart from the adjudications on the question, I should be inclined to the opinion that, as a main purpose in taking a policy of accidental insurance is to procure indemnity against the consequences of the insured party's carelessness and oversights, a stipulation against "exposure to unnecessary danger or to obvious risk of injury," excludes from the force of the policy, accidents occasioned by that positive sort of negligence which, in personal injury litigation, falls within the doctrine of assumed risk, and consists of knowledge of a danger and willingness to encounter it; but does not exclude such as happen from the mere failure of the insured to shun a danger unknown to him, but which might have been known by due care; or what is denominated, contributory negligence. This view would require, to bring into operation the minimum indemnity clause of the policy, volition on the part of the insured in needlessly exposing himself to danger, as in cases where the word "voluntary" is used. It seems to me the intention of the contract implies liability for an accident unless there was a voluntary assumption of unnecessary risk; an assumption of the risk not, of course, in the expectation of being hurt (which would amount to self-inflicted injury), but in the expectation of encountering the danger and avoiding injury from it. This view is countenanced to some extent by the adjudications; but the decisions turn so largely on the particular language of the policies construed that exactly apposite precedents are scarce. The cases dealing with

the subject which I have examined, may be classified according to the language of the policies, as follows:

First. Cases like the present one in which the qualifying word "voluntary" is not found, but the exemption is for "exposure to unnecessary danger or obvious risk of injury." Cornish v. Ins. Co., L. R. 23 Q. B. Div. 453; Tuttle v. Ins. Co., 134 Mass. 175; Cawtelle Admx. v. Assurance Co., 15 Blatch. (U. S.) 216.

Second. Those wherein the clause of the policy construed was that the insured should exercise "due diligence for his safety," or words of similar import. Stone's Adm. v. Casualty Co., 34 N. J. Law 371; Duncan v. Mut. Acc. Assn., 13 N. Y. Supp. 620; Tooley v. Assurance Co., 3 Bissell (U. S.) 399; Badenfield v. Ins. Co., 154 Mass. 77.

Third. Those wherein the exemption was for wilful or wanton exposure to unnecessary danger. Schneider v. Ins. Co., 24 Wis. 28; Provident, etc. Co. v. Martin, 32 Md. 310.

Fourth. Those in which the clause invoked as exempting the company from liability provided an exemption if the insured voluntarily exposed himself to unnecessary danger. Bean v. Employers, etc. Co., 50 Mo. App. 459; Schneiderer v. Ins. Co., 58 Wis. 13; Mfg. Indemnity Co. v. Dorgan, 58 Fed. 945; Burkhard v. Ins. Co., 102 Pa. St. 262; Keene v. Ins. Co., 36 N. E. (Mass.) 890; Marx v. Ins. Co., 39 Fed. 321; Duncan v. Mut. Acc. Assn., 13 N. Y. Supp. 620; Travelers Ins. Co. v. Jones, 80 Ga. 541; Equitable Ins. Co. v. Osborn, 90 Ala. 201; Shaffer v. Ins. Co., 22 N. E. (Ill.) 589.

It is apparent that in the third and fourth classes of cases merely inadvertent negligence is excluded from the force of the exemption clause; that in the second class, where the proviso is for the exercise of diligence by the insured to secure his safety, the intention is to induce circumspection and caution and exempt the company from responsibility for accidents due to the insured's negligence. Opinions in cases of the first class are in

point in the consideration of this one, for the reason that the language construed was similar to what we have here. An examination of those opinions shows that, while the courts have been careful in most instances to guard themselves against saying that any negligence of the insured which would defeat an action against the party that caused his injury on the score of contributory negligence, would likewise defeat an action on the policy, they hold that a provision against exposure to unnecessary danger, may be violated by his negligence of a certain degree. If, then, negligence constitutes a defense to this action, as those authorities declare, it follows that decisions on clauses providing that the insured must exercise due diligence for his personal safety are in point; for negligence is, of course, a defense under that kind of a stipulation.

Some of the precedents will be analyzed to deduce the rule they prescribe.

In Cornish v. Ins. Co., 23 Q. B. Div., supra, a farmer, while driving a wagon across a railway track, was killed by a train which he could have seen if he had been paying attention to what he was doing. The words relied on to exonerate the company were "the exposure of the insured to obvious risk of injury," and the court of Queen's Bench held that the clause excluded from the force of the policy two classes of accidents: First, those arising from exposure of the insured to a risk obvious to him at the time; second, those arising from a risk that would have been obvious to him if he had attended, with reasonable care, to his surroundings. The court declared it was not prepared to say that injuries caused by the negligence of the insured were, in all cases, exempt; but only that the policy did not protect him against the consequences of a risk which would have been obvious enough if he had been paying the slightest attention to his acts. The effect of that decision is, that although the danger was not in fact known to the in-

sured, yet if he was grossly negligent in not knowing it, he was so far at fault as to come within the exemption.

In Tuttle v. Ins. Co., 134 Mass. supra, the company was exonerated if the insured party exposed himself "to obvious or unnecessary danger," and he was required to "use all due diligence for his safety." He was killed while running along a railway track at night in front of a moving train for the purpose of getting on another train travelling on a parallel track. Under these circumstances the insured was held to have been guilty of exposing himself to obvious danger. The court said: "The conduct of the deceased was such as in the words of Mr. Justice COLT, 'is condemned by the general knowledge and experience of all prudent men and is conclusive on the question of due care.' The danger was obvious, the exposure to it was unnecessary, the want of due diligence clear." Again: "If a person voluntarily places himself in a position where he is exposed to an obvious danger and the precise injury happens to him which there is reason to fear, it can not fairly be held that the language of this policy was not intended and understood to be applicable to such a case." Although in that instance the policy did not require a "voluntary" exposure to unnecessary danger, it is plain that the insured both unnecessarily and voluntarily exposed himself.

In Sawtelle's Admx. v. Ins. Co., 15 Blatchf. supra, the decedent was killed by falling from a platform of a car at night while the train was in full motion, his fall being caused either by his riding on the platform or passing from one car to another. The language of the exempting clause was that no claim should lie against the company for death or injury "in consequence of exposure to unnecessary danger, hazard, or unnecessary venture." The decedent was held to have been guilty of negligence within the meaning of the exemption and that there was no question for the jury. This case decides that "negligence" and "exposure to unnecessary

"danger" are equivalent terms and apparently that any negligence on the part of the insured which would have been a defense to an action against the railroad company, was a defense to an action on the policy.

In Tooley v. Ins. Co., 3 Bissell 399, the policy provided that the insured should not neglect "to use due diligence for self-protection," and it was held that "it was his duty to use that degree of caution and diligence which a prudent man would use under the circumstances in which he was placed."

In Keene v. Accident Co., 36 N. E. 891, the Supreme Court of Massachusetts had to deal with a policy providing against voluntary exposure to unnecessary danger and also with one that the certificate holder must use "all due diligence for his personal safety and protection." The former proviso was held to include a voluntary but not an involuntary exposure to unnecessary danger; that is, a conscious and intentional exposure—something the insured was conscious of and willing to take the risk of. Due diligence to be exercised by the insured was said to mean, not that he must guarantee himself against accidents, or that he could not recover for an accident to which some want of care on his part might contribute: he was not required to use all possible diligence, but all due diligence. The opinion further said that due diligence is not inconsistent with inadvertence, nor running such risks as prudent or cautious persons would run. In that case the deceased had been killed by getting off a car at a station and passing across some tracks with an umbrella hoisted so as to obstruct his view, with the result that he was struck by some freight cars which had been shunted along one of the tracks. It was held to be a question for the jury whether he had violated the policy.

Some of the decisions based on policies stipulating against a voluntary exposure to unnecessary danger, are more radical as to the negligence necessary to

prevent a recovery and require an intentional act which a person of ordinary prudence would pronounce dangerous; that is, an act done with knowledge of its dangerous character. Burkhard v. Ins. Co., supra.

In Scheiderer v. Ins. Co., 58 Wis. supra, the exemption was for voluntary exposure to unnecessary danger and the facts were that the plaintiff, who was traveling on a train, fell asleep and while he was in a doze, not knowing or realizing what he was doing, arose from his seat, walking to the platform of the car and fell off. This act was held not to come within the exemption.

In Mfg. Indemnity Co. v. Dorgan, 58 Fed. supra, the insured, while ill, had gone on a fishing trip and was afterwards found lying in a brook face downward and dead. The court had to pass on the meaning of voluntary exposure to danger; and it was held that such an exposure was something beyond the ordinary; wanton exposure, or gross carelessness; that a less degree of negligence would not exempt the company.

In Marx v. Insurance Co., 39 Fed. 321, the insured was killed by falling from the platform of a car while the train was running. He had gone on the platform because he was suffering from overheat and nausea. The platform was said to be a dangerous place, but that it was for the jury to determine whether the circumstances considered, he unnecessarily exposed himself to danger in riding there.

Viewing the facts of the present case, so far as they are known, in the light of the foregoing authorities, some of which make a negligent exposure to danger even when the insured was ignorant that it was impending, a defense, we will endeavor to ascertain whether the argument of the defendant that the deceased was conclusively proved to have been guilty of negligence, is sound. In the first place, it is to be observed that the burden of proof was on the defendant to show the insured, Oscar Jamison, met death in a way

that would bring into operation the policy's minimum indemnity clause. The legal presumption is that he was not negligent, but was observing due care, and the company must establish that he was so far at fault as to exonerate it from payment of the full indemnity. This was decided in an apposite case. Meadows v. Ins. Co., 129 Mo. 76; see also, Freeman v. Ins. Co., 144 Mass. 572; Bedenfeld v. Assn., 154 Mass. 77. What facts were proven on which to rest the argument that the deceased was to blame for his death? That the body was found a short distance from the railroad track with wounds on it, that blood-stains could be traced from there to the track, and that the deceased's hat was on the track cut in two, may be said to show he was killed by a train. But his avocation exposed him constantly to the danger of being thus killed and that was one of the risks insured against. He may have been struck while performing his duty carefully and according to his best judgment, and is not conclusively shown to have been careless by the fact that he was so near the track as to be hit by a train, though this does prove he was in a dangerous position. Erickson v. Railroad, 171 Mo. loc. cit. 658. The recited facts did not so completely overcome the legal presumption that, when killed, he was in the exercise of due care, as to take the issue from the triers of the facts. This was decided in Meadows v. Ins. Co., supra. In that case the company was not liable if the insured was hurt from voluntary exposure to unnecessary danger, and he was further bound to use due diligence for his personal safety and protection. The question arose as to whom the burden of proof was on to show the exempting clauses took effect, and it was ruled, as stated, to be on the insurance company. The further question was whether the company made sufficient proof that the deceased was negligent by showing certain facts. The deceased was found on a railway track, with his body cut diagonally across, the legs lying between the rails and the trunk outside. He had

got into Chillicothe during the night and inquired about getting to St. Joseph and was told that he could leave at 4:20 a. m. He was further told there was a freight train that would not carry passengers; but he said he was a stockman and it would carry him. He then left the Wabash station and started across some railway tracks on which trains were moving. Shortly afterwards a scream was heard as of some one in distress, and at the same time the noise of a train was heard. The insurance company contended the only reasonable inference from those facts was that Meadows lost his life in attempting to pass between the cars of a moving train, in violation of his agreement not to expose himself to unnecessary danger. In dealing with this contention, the Supreme Court held that while that theory might be true, the facts were insufficient to overcome, as a matter of law, the presumption that he was exercising due care, but were for the jury to weigh.

In Badenfeld v. Ins. Co., 154 Mass. supra, it was asserted to be an irresistible inference that the insured fell while leaving a train which was in motion. On this contention the Supreme Court of Massachusetts held, that granting the proposition to be true, it would not conclusively establish that the deceased was negligent; but whether or not he was negligent would depend on the circumstances under which he left the moving train; "and there would be be no presumption that the circumstances were such as to make it negligence." Numerous cases to the same effect might be cited; but those are sufficient for the present purpose; and they establish the proposition that the circuit court could not, from the circumstances above stated, properly have drawn the conclusion, as a legal inference, that Oscar Jamison was killed while exposing himself to unnecessary danger or to obvious risk of injury.

What is relied on further and principally in this connection is the testimony of one of the persons who discovered the deceased the morning after he was

wounded, that the deceased said to him he had been struck by a train while asleep. We will notice presently the character of this evidence with a view to determining the weight that ought to be given to it. But granting the declaration was true and that the deceased fell asleep, the inquiry arises whether that was such negligence on his part as to constitute, under all circumstances, exposure to unnecessary danger. The duty of the deceased was to remain at the bridge, watch for trains and flag them. If he fell asleep while at his post, we think there is a possibility that he did so blamelessly. Instances are numerous in which railroad men who were exhausted from being worked overtime have been suddenly overpowered by sleep at their posts, quite against their wish or expectation. If Oscar Jamison lay down, or otherwise disposed himself to go to sleep where he knew he would be hurt by a train if one passed, he was guilty of taking an unnecessary risk and the fact would prevent recovery of the full indemnity. If he fell asleep, the case is like some of those cited above in which a passenger fell off a train. The fact may have been or not, according to the circumstances, exposing himself to unnecessary danger. That is to say, it was a question for the jury, or for the court acting as a jury. He may have sat down during his vigil at a point out of danger, have fallen asleep and moved, while asleep, into danger. We can indulge no presumption in regard to the matter.

The testimony supposed to prove the defendant was asleep when struck by the train, was given by a witness who saw him in the morning of April 15th, after he had been injured the night before. The witness said that Jamison was then in a semiconscious condition and testified further as follows:

"I first said to him when I approached him, put my hand on his breast and said 'what in the world is the matter?' He opened his eyes and looked at me, but

didn't speak until I repeated the question and then he said he didn't know. I asked him then if he had been hit by the train; repeated the question before he answered it, and he said he had. I asked him then if he had fallen asleep; repeated this question before he answered it; he said 'Yes.' I asked him how he came to go to sleep; said he didn't know.

"Q. Where was Jamison at the time this conversation was held with reference to the place where you found him? A. He was lying right where I first found him.

"Q. Who was present when said conversation was held? A. Only he and myself."

From the testimony it seems that the deceased was in such a stupor while the witness talked to him as to render it very doubtful if he understood what was said to him or by him. When first asked what was the matter, and after the question had been reiterated, he said he did not know what was the matter; and his other replies may have been mechanical assents to the inquiries addressed to him. He had been in an unconscious condition for hours and died shortly afterwards, and in that state was as likely as not to give an affirmative response to a suggestive question. We think the circuit court might justly have attached little importance to the statements of the deceased as proving that he was killed while asleep on the track. Assuredly, those statements do not establish that fact so conclusively as to make it our duty to determine it contrary to the finding below.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.