NANNIE C. POWELL, Appellant, v. TRAVELERS
    PROTECTIVE ASSOCIATION OF AMERICA,
    Respondent.

St. Louis Court of Appeals.   Argued and Submitted October
        20, 1911.   Opinion Filed November 7, 1911.

1. ACCIDENT INSURANCE: Action on Policy: Defense of
   Voluntary Exposure to Danger: Question for Jury. In an
   action on an accident insurance policy to recover for death
   alleged to have resulted from an accident, defended on the
   theory that insured met his death as a result of voluntary
   and unnecessary exposure to danger, contrary to the terms of
   the policy, where it appeared that insured had been ejected
   from a passenger train about a quarter of a mile from a
   station, and, while walking on the track and at a point opposite
   the first street connected with the track by which he could have
   got out of the railroad yards, was struck by another train and
   killed, held, under the evidence, that it was a question for the
   jury, whether insured met his death by voluntary or unneces-
   sary exposure to danger.

2. ————: ————: Voluntary Exposure to Danger: Policy Pro-
   vision Construed. In order to bar a recovery under a provision
   of an accident insurance policy, avoiding the policy in case of
   a voluntary or unnecessary exposure to danger, the voluntary
   exposure must have been with respect to a danger so obvious
   that no ordinarily prudent person would have incurred it.

3. ————: ————: Defense of Voluntary Exposure to Danger:
   Evidence. In an action on an accident insurance policy to
   recover for death alleged to have resulted from insured being
   struck by a railroad train, after having been ejected from
   another train, defended on the theory that insured met his
   death as the result of voluntary and unnecessary exposure to
   danger, contrary to the terms of the policy, evidence as to what
   took place between insured and the conductor who ejected
   him, prior to the ejection, was properly excluded, but evi-
   dence concerning the ejection, how it was effected, the *quantum*
   of force employed, and the manner in which insured fell or was
   thrown to the ground, was admissible, as bearing on the question
   of his mental and physical condition between that time and
   the time he was struck by the other train.

4. ————: ————: ————: Evidence. In an action on an ac-
   cident insurance policy to recover for insured's death by being
   struck by a railroad train while walking on the track after

having been ejected from another train, defended on the theory that insured met his death by voluntary and unnecessary exposure to danger, contrary to the terms of the policy, evidence offered by plaintiff that it was a common thing for people to walk on the track at the place insured was walking was properly excluded, in the absence of an offer to show that insured knew of such use of the tracks.

5. ————: ————: ————: **Evidence: Binding Effect of Plaintiff's Testimony.** In an action on an accident insurance policy to recover for insured's death by being struck by a railroad train after having been ejected from another train, evidence by the beneficiary (the widow of insued), who had not seen insured for some time prior to the accident, concerning his physical and mental condition, did not conclusively prove his condition at the time of the accident, so as to conclusively establish a defense that he had voluntarily placed himself in a situation of danger, especially in view of the fact that other evidence would warrant the jury in drawing its own inferences as to the physical and mental condition of insured at the precise time of the accident.

6. **EVIDENCE: Presumption: Continuance of Existing Condition.** It is presumed that a physical or mental condition, shown to exist, continues until a change therein is shown.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED AND REMANDED.

*Wilfley, Wilfley, McIntyre & Nardin* for appellant.

(1) Death being shown to have resulted from violent, external causes, the presumption is that the deceased was exercising due care for his own safety at the time, and not voluntarily or unnecessarily exposing himself to danger; and the burden is on the defendant to rebut that presumption, and show by positive testimony that the assured was violating conditions of the policy. Jamison v. Casualty Co., 104 Mo. App. 306; Meadows v. Ins. Co., 129 Mo. 76; Fetter v. Fidelity & Casualty Co., 174 Mo. 256; Keene v. Accident Ass'n, 161 Mass. 149. (2) Before a peremptory instruction can be given where the burden of proof as to any point

in the case rests on one party, that party must prove the point by uncontradicted facts or circumstances so conclusively that a reasonable inference to the contrary is impossible. Ferguson v. Railroad, 123 Mo. App. 590; Buckley v. Kansas City, 156 Mo. 16; Charlton v. Railroad, 200 Mo. 441; Queatham v. Modern Woodmen, 148 Mo. App. 51. (3) Voluntary or unnecessary exposure to injury is not the same as mere inadvertence or negligence. It is a positive, intentional assumption of the known danger unnecessarily. Jamison v. Casualty Co., 104 Mo. App. 306; Bateman v. Ins. Co., 110 Mo. App. 443; Williams v. Accident Ass'n, 133 N. Y. 367; Johnson v. Guaranty Co., 115 Mich. 86; Keene v. Accident Ass'n, 161 Mass. 149; Tuttle v. Ins. Co., 134 Mass. 175; Burkhard v. Ins. Co., 102 Pa. St. 262; U. S. Accident Ass'n v. Hubbell, 56 Ohio State 516, 40 L. R. A. 453; Fidelity & Casualty Co. v. Chambers, 93 Va. 138. (4) The act of plaintiff's deceased husband, in walking on a railroad track from where he was put off the train to the point of accident, cannot be said, as a matter of law, to constitute voluntary or unnecessary exposure to danger, but the facts of the case as between the deceased, Powell, and the insurance company, make the issue of voluntary or unnecessary exposure to danger a question for the jury. Powell v. Railroad, 229 Mo. 246; Jamison v. Casualty Co., 104 Mo. App. 306; Meadows v. Ins. Co., 129 Mo. 76; Bateman v. Ins. Co., 110 Mo. App. 443; Keene v. Accident Ass'n, 161 Mass. 149; Burkhard v. Ins. Co., 102 Pa. St. 262; Travelers Ass'n v. Accident Co., 10 Manitoba Law Rep. 537; Fidelity & Casualty Co. v. Chambers, 93 Va. 138.

*Thomas G. Rutledge* for respondent.

(1) Where an accident certificate expressly excepts liability for death resulting from voluntary and unnecessary exposure to danger, and where the facts are undisputed, there can be no recovery when it ap-

pears that the assured, possessed of all his faculties, chooses to walk on the main track of a trunk railroad at ten o'clock on a clear starlight night, when he had the choice of several other paths that were perfectly safe leading in the direction he was going and when he was under no imperative or any other necessity to walk there, and when it appears that he was a traveling salesman who lived in the neighborhood and was accustomed to travel over this road every week and knew the frequency with which trains passed over it, and could easily have stepped out from between the rails to a place of safety, and when it appears that he was paying no attention to trains approaching on that track and was not watching out for the dangers incident to the very place along which he was walking, and when it appears that he was not acting with ordinary prudence and was guilty of the grossest negligence.  Alter v. Casualty Co., 108 Mo. App. 169; Bean v. Liab. Co., 50 Mo. App. 459; Glass v. Masonic Ass'n, 112 Fed. Rep. 495; Price v. Ins. Co., 99 N. W. 887; Tuttle v. Ins. Co., 134 Mass. 175; Willard v. Ass'n, 169 Mass. 288; Shevlin v. Ass'n, 94 Wis. 180; Ins. Co. v. Taylor, 71 Ill. 135; Ins. Co. v. Jones, 80 Ga. 541; Follis v. Ass'n, 94 Ia. 435.

(2)    The question resolves itself into one whether or not Mr. Powell in using the railroad as a footpath at night under the facts shown in this case was acting with reasonable and ordinary prudence, and in this respect the analogy from the law of negligence is conclusive that such an act is not that of an ordinarily and reasonably prudent person, and that under the circumstances disclosed by the evidence in this case was the grossest negligence.  Engelking v. Railroad, 187 Mo. 158; Loring v. Railroad, 128 Mo. 359; Tanner v. Railroad, 161 Mo. 487; Porter v. Railroad, 199 Mo. 82; Frye v. Railroad, 200 Mo. 377; Koegel v. Railroad, 181 Mo. 379; Davies v. Railroad, 159 Mo. 1; Wheat v. St. Louis, 179 Mo. 572; Barker v. Railroad, 98 Mo. 52; Zimmerman v. Railroad, 71 Mo. 490; Brockschmidt v. Rail-

road, 205 Mo. 435; Sanguinette v. Railroad, 196 Mo. 466; Stotler v. Railroad, 204 Mo. 619.

REYNOLDS, P. J.—This action was brought in the circuit court of the city of St. Louis, by Mrs. Nannie C. Powell, widow of William B. Powell, against the Travelers Protective Association of America, of which he was a member at the time of his death, to recover $5000 on a policy or certificate issued to the husband by defendant. At the conclusion of the evidence for plaintiff, the court instructed the jury that under the evidence and pleadings in the case, plaintiff was not entitled to recover. Plaintiff, excepting, took a non-suit with leave to move to set it aside, and that being filed and overruled and exception saved, and motion for new trial duly filed and overruled, plaintiff excepting, perfected her appeal to the Supreme Court. The amount in controversy being $5000, and the judgment of non-suit having been entered in November, 1906, the case was appealed to the Supreme Court, it then having jurisdiction of cases involving that amount. This jurisdictional amount having been changed pending the submission of the case to the Supreme Court by the Act of the General Assembly of the state (Laws 1909, p. 397, now section 3937, R. S. 1909), the Supreme Court transferred the case to this court.

A comparison of the statement of the case made by counsel for appellant with the abstract of the record, satisfies us that that statement is fair. In fact the statement filed by the learned counsel for respondent, while differing from that made by counsel for appellant, in that it sets out some of the testimony verbatim instead of in narrative form, or according to its effect, as is done by counsel for appellant, for all practical purposes agrees with the statement made by counsel for appellant. We accordingly feel warranted in following that statement substantially as so made. There is no contention over the fact that William B. Powell

was killed on July 23, 1905, by being struck by a train on the St. Louis & San Francisco Railroad, in the city of Pacific, Missouri.

The petition in the case states the membership of William B. Powell in the defendant company; the provision of the by-laws providing for a payment of five thousand ($5000) dollars in case of accidental injury or death, and that Powell was killed by being struck by a train and prays judgment for five thousand ($5000) dollars.

The answer alleges the provision of the by-laws that defendant should not be liable in case of death or disability caused wholly or in part by voluntary or unnecessary exposure to danger, and continues with the allegation that said William B. Powell did voluntarily and unnecessarily expose himself to danger by walking on the railroad tracks of the St. Louis and San Francisco Railway, over which trains were passing with frequency, and that as a consequence of such voluntary and unnecessary exposure he was run over and killed.

The rules appearing on the back of the certificate of membership introduced in evidence, have the following language touching the point at issue in this case:

"The member hereby agrees that the following rules shall be observed: that the Travelers Protective Association of America shall not be liable for injuries incurred by a member in occupations more hazardous . . . than specified in his application for membership; or in case . . . of death or disability caused wholly or in part by . . . voluntary or unnecessary exposure to danger."

On the 23d day of July, 1905, Powell boarded a train of the St. Louis and San Francisco Railway, at Pacific, Missouri, the train being an excursion train on its way to St. Louis. When the train was leaving Pacific, the conductor approached Powell and asked him for his ticket. Plaintiff here sought to show the controversy which took place between the conductor

and Powell, but that evidence was excluded by the court, the ruling being that plaintiff might only show that he was put off the train against his will. Plaintiff was allowed to show, and did show by several witnesses, that when the train was between a quarter and half a mile east of the union depot at Pacific, and near the Frisco pump house, marked on the plat introduced in evidence, the conductor and brakeman of the train, forcibly ejected Mr. Powell from the train. This was about 9:45 o'clock in the evening, and the evidence is that it was a clear night, the stars shining, but no moon. From the blue print introduced in evidence, made from a plat drawn by an engineer on an accurate scale, showing the physical conditions of the St. Louis and San Francisco track from a point east of where the injury occurred, to the union station at Pacific, as well as from the testimony of witnesses in the case, it appears that at the place where Mr. Powell was ejected from the train the road passes near the Meramec river, and on both sides of the track in the vicinity where he was put off, there are ditches or "borrow pits," a little over eight feet in depth; in other words, the track at this place is built on an embankment, or fill. The witnesses testified that at the place where Powell was put off, the embankment was eight to ten feet high, measured from the bottom of the ditches on either side, and that Powell was thrown off the steps of the car, head foremost, down the embankment.

At the place where Powell was ejected from the train there was no light, it being entirely outside of the city of Pacific, something like fifteen hundred feet, or a little over a quarter of a mile from the last house east along the railroad in Pacific. On one side of the Frisco track, and less than one hundred feet from the track in the vicinity where Powell was put off the train, runs the Meramec river. On the other side of the Frisco track, across the ditch, is the track of the Missouri

Pacific Railway, and beyond that is a small creek which runs parallel with the Missouri Pacific track for some distance west of the vicinity where he was put off, crossing the track and emptying into the Meramec river at a point a short distance east of the Frisco pump house, or about in the vicinity where witnesses testified Powell was put off the train. The ditch, or "borrow pit," on the south side of the track, extends westward beyond the point of accident varying from eight and a half feet in the vicinity where he was put off the train, to five and a half feet at the point of the accident. The ditch on the north side of the track extends westward to the point where a transfer or switch track connects with the Missouri Pacific tracks and runs into and connects with the Frisco main line track. From that point west to the point of accident, the testimony shows that on the north side of the Frisco main line the ground is practically level. From the Frisco pump house west, there are on the north side and near the main line of the Frisco, three tracks of the Missouri Pacific, and beginning about the place where the ditch on the north side of the track stops, there are four Missouri Pacific tracks north of the Frisco track to the point of accident. All of these facts appear from the blue print introduced in evidence and in the abstract of the record, and the witnesses unanimously testified to the same physical conditions in the vicinity.

Powell was ejected from an excursion train proceeding on the main track of the Frisco toward St. Louis. That train proceeded to the next station east of Pacific, a distance of about four and a half miles from Pacific, where it took the siding and allowed the fast mail train of the Frisco, going west, which is known as the "Sunflower Limited," being one of the through trains of the Frisco from St. Louis to Texas, to pass it on the main track.

According to the testimony, about fifteen minutes elapsed from the time Mr. Powell was put off the train

going east, until he was struck by the fast train going west. The point where he was struck is fifteen hundred and thirty two feet west of the Frisco pump house, near which, the testimony is, he was ejected from the train, and is just opposite the corner of Elm street in Pacific, which was the first street connecting with the railroad track by which Powell could have gotten out of the railroad yards.

There is no testimony covering the movements of Mr. Powell from the time he was ejected from the train near the Frisco pump house until a few seconds before he was struck by the Frisco train which killed him. From the time he was put off the train until he was killed, a period of about fifteen minutes had elapsed, and Mr. Powell's location was changed something more than a quarter of a mile.

The plat, or blue print, of the vicinity of the accident, shows that Mr. Powell was struck just where a transfer or switch track passes out from the Frisco main line to one of the lines of the Missouri Pacific, it being the west connection of the transfer tracks between the Missouri Pacific and the Frisco lines. It appears also from the plat, that at that point there were four lines of Missouri Pacific track immediately north of the Frisco main line. There were no railroad tracks south of the Frisco main line. There were no streets approaching the railroad tracks at this point from the north, but Elm street ran up to the track, crossing a ditch five and a half feet deep, on the south side, although the street was not made at this point, and there was no crossing for wagons over the railroad tracks.

Witnesses testified to having seen Powell walking on the main line of the Frisco just a few seconds before he was killed. On the Missouri Pacific track just north of where the accident occurred, there was an engine pulling a long line of freight cars. Witnesses who were on the engine of the Missouri Pacific at the time, testified that they were a short distance east of Mr. Powell

when their attention was first called to him by danger signals from the engine pulling the fast train on the Frisco, the headlight of the Frisco train at that time being full on the track where Mr. Powell was walking, and at the time he was proceeding westward or the same direction in which the train which struck him was going, with his back to the train. It appears from the blue print that the track from the accident east, is straight for a distance of 450 feet, at which point it begins to curve slightly to the south as it goes eastward. The Frisco train was running between thirty and thirty-five miles an hour. The engineer testifies that he saw Powell on the track when the train was one hundred to one hundred and fifty feet away, and at once sounded the danger signal and applied the emergency brakes, but could not stop the train before it struck him. The witnesses who were on the Missouri Pacific train at the time, and who saw the accident, testified that Powell was walking westward looking slightly northward toward the Missouri Pacific train on which they were riding. He showed no sign of having heard the whistle of the Frisco train before it passed the curve, or of having heard the danger signal, and appeared totally unconscious of the approach of the train behind him. At the time these signals were sounded the Missouri Pacific engine was east of where Powell was walking, that is, slightly north of him and behind him, and was making the usual noise of the exhaust when an engine is pulling a heavy train slowly; the bell was being rung at the time and the whistle was being sounded.

When the Frisco train struck Powell, it knocked him off the track. The train was stopped with the engine about four hundred feet west of where Powell was struck, and when the train crew went back they found him lying near the track, on the right of way.

There was testimony tending to prove that the ditches, or "borrow pits," along either side of the

Frisco track, were allowed to grow up in weeds during the summer, and one witness testified that there were shrubs growing in the ditch, that there was a wire fence crossing the ditch on the south side at a place not far from where Powell was killed, and that there were stumps of bushes and shrubs that had been cut off along the ditches from place to place, and in several places old ties were piled in these ditches.

Evidence was offered to show that it was a common thing for people to pass up and down the Frisco track from the place where the accident occurred to beyond the Frisco pump house; but this evidence was excluded by the trial court.

There is no evidence of how far Powell had walked between the rails of the main track of the Frisco. It appears from the blue print in evidence, that if he had been walking between the Frisco track and the Missouri Pacific, or transfer track, prior to the time he was struck, he was under the necessity, at or near the place he was struck, of crossing some track, if he continued his journey toward Pacific, or turned off of the right of way to the first street which approached the track from the south.

On these facts, we are compelled to hold that the action of the learned trial judge, in sustaining a demurrer to the evidence was error.

The law thought to be applicable to this class of cases is so fully briefed and the cases so copiously cited by the learned counsel for the respective parties, that it is usless for us to here repeat either. Nor will we undertake to follow counsel in their arguments as to the application or non-application of cases cited. It will suffice to say that for the purpose of this decision, we are guided principally by these cases, namely: Jamison v. Continental Casualty Co., 104 Mo. App. 306, 78 S. W. 812; Meadows v. Pacific Mut. Life Ins. Co., 129 Mo. 76, 31 S. W. 578; Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S. W. 592; Powell v. St. Louis & S. F.

R. Co., 229 Mo. 246, 129 S. W. 963. On their authority we think this was a case for the determination of the jury, under the issues made and the facts in evidence.

The case of Powell v. St. Louis & San Francisco Railroad Co., supra, was a case by this same plaintiff against that railroad company for damages claimed for the death of her husband in the accident here involved. The plaintiff there recovered in the trial court but on appeal by defendant the judgment was reversed and the cause remanded, a majority of the Supreme Court in banc concurring in the reversal. The point of reversal and of dissent of three of the judges was confined entirely and solely to what the majority of the court held to be the error of the trial court in excluding testimony offered of the acts of the porter and train collector and that of the plaintiff's husband, while the latter was being transported upon the train of defendant from St. Louis to Pacific immediately prior to his taking the train from which he was ejected. It appears that the deceased had ridden out on a train of the Frisco from St. Louis to Pacific, his destination being Eureka, and that train not stopping there, when he reached Pacific, he boarded the train from which he was ejected. It was over the admissibility of evidence as to his contention with the porter and collector on the train from St. Louis to Pacific that the judges divided. Four of the judges, the majority, held that it was prejudicial, reversible error to have excluded this testimony. The three dissenting judges held to the contrary. But all the judges united in holding that there was no other error in the case and that the instructions given were correct on all other points involved, particularly on the issue of whether the deceased could be charged with contributory negligence and so defeat plaintiff in her right to recover. The views of Judge Fox, speaking for the majority of the court on this particular matter will be found under the third subdivision of his opinion, commencing at page 274; those

of Judge GANTT, who spoke for himself and Judges
VALLIANT and WOODSON, commence at page 287, and
Judge VALLIANT, at pages 295 and following, while con-
curring with Judges Fox and WOODSON, expresses his
own views in a separate opinion.

The facts in evidence in the case at bar and in this
case are practically identical. It was the same acci-
dent. Our Supreme Court, all the judges agreeing,
held it a case for the jury. The issue of contributory
negligence was there involved. Here assumption of
risk is involved. In Powell v. St. Louis & S. F. R. Co.,
supra, the contributory negligence charged is that
Powell walked along the tracks. In the case at bar, the
voluntary exposure to danger charged is that Powell
walked along these same tracks. The evidence in the
two cases on this was practically identical. Admitting
that there is a line between the assumption of risk and
contributory negligence, where does it appear here? If
in the first case there was evidence warranting the jury
in finding there was no contributory negligence, it can-
not be held in the case at bar, as a matter of law, that
the same evidence showed that there had been an as-
sumption of risk by a "voluntary or unnecessary ex-
posure to danger," for we take it that to defeat a re-
covery as a matter of law on that score, such voluntary
exposure must be had with respect to a danger so ob-
vious that no ordinarily prudent person would en-
counter it.

We can arrive at no other conclusion from a con-
sideration of the first case, than that the evidence in
this case warranted its submission to the jury, and that
it was error for the learned trial judge to have sus-
tained the demurrer to it. So also is the conclusion
arrived at by a consideration of the other cases above
cited.

If the case is to be retried, it is not out of place to
say that the ruling of the trial court in excluding evi-
dence of what took place between the conductor of the

train from which he was ejected, and the deceased, prior to putting Mr. Powell off the train, was properly excluded, in this case and between these parties, save as to the act of ejectment. How that was effected, the force used, if any, is relevant to the case at bar. Evidence tending to show that deceased was put off the train against his will, how he fell or was thrown to the ground, are facts for the consideration of the jury in determining his mental and physical condition between that time and the time of the accident. We understand that the trial court did admit these facts in evidence.

The trial court committed no error in excluding the evidence that was offered to show that it was a common thing to pass up and down the Frisco tracks from the place where the accident occurred to beyond the Frisco pump house, unless this offer was accompanied with a further offer to show knowledge on the part of the deceased of this alleged user of the tracks.

It is further to be noted that counsel for the respondent sets out with particularity the testimony of plaintiff as to her husband's physical and mental condition, apparently arguing that this proved that the deceased had voluntarily placed himself in a situation of known peril. We cannot accept this as conclusive of his condition after leaving the train and before he was killed. It is in evidence that plaintiff had not seen her husband for some time prior to the accident. Her evidence did not bring the condition of her husband, mentally or physically, down to the time of the accident; did not cover the time elapsing between his being thrown off the train and the time when the accident occurred. Assuming that the deceased was violently thrown off the train and fell, striking his head and shoulders, it was for the jury to draw its own inference as to the effect upon both his mind and body. The presumption always is, that a given mental or physical condition being shown to exist at one time, continued until a change is shown. But facts being in evidence

as to the ejectment from the train, the jury had a right to draw its conclusions, on those facts, as to their effect, if any, upon the mind and body of the deceased. The mental and physical condition of Mr. Powell between the time of his being thrown off the train and the time of the accident, are matters with which a jury has to deal in passing on that condition.

For the reasons stated, however, that is to say, for the error of the trial court in sustaining the demurrer to the evidence, the judgment of that court is reversed and the cause remanded. *Nortoni* and *Caulfield, JJ.,* concur.

